Clarence E. **WALKER**, Jr., Plaintiff,

v.

Caspar W. **WEINBERGER**, et al., Defendants.

Civ. A. No. 83–3160.

United States District Court, District of Columbia.

Jan. 14, 1985.

---

Alan Steele-Nicholson, Steptoe & Johnson, Washington, D.C., for plaintiff.

Wayne Williams, Asst. U.S. Atty., Washington, D.C., for defendants.

## MEMORANDUM AND ORDER

JACKSON, District Judge.

Plaintiff Clarence E. Walker, Jr., a recovered (or recovering) alcoholic, brings this handicap discrimination suit and simultaneous Merit Systems Protection Board ("MSPB") appeal against his former employer, the U.S. Department of Defense, and the Secretary of Defense, for reinstatement and back pay to redress his allegedly wrongful dismissal, effective July 3, 1981, as a WG–4 printed-materials "packer" for the Defense Printing Service ("DPS") located at the Washington Navy Yard.[1]

---

1. This case began as Appeal No. 83–809 in the     U.S. Court of Appeals for the Federal Circuit but

Walker claims that DPS discriminated against him as a handicapped employee in violation of section 501 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 791, and the Comprehensive Alcohol Abuse and Alcoholism Prevention, Treatment, and Rehabilitation Act of 1970 ("Alcohol Rehabilitation Act"), 42 U.S.C. § 290dd, in failing to accord him a reasonable accommodation of his alcoholism by cumulating a series of unauthorized absences antedating his treatment for, and concededly resulting from, his alcohol abuse with others occurring thereafter to justify a disciplinary dismissal for which neither group alone would have been sufficient. His MSPB appeal presses his contention that the MSPB upheld an agency decision, i.e., his dismissal, which originated in one or more personnel practices prohibited under 5 U.S.C. § 2302(b), and, in consequence, the MSPB's findings and conclusions must be deemed arbitrary and capricious, or otherwise not in accordance with law. 5 U.S.C. § 7703(c)(3). Specifically, Walker asserts that DPS dismissed him because he was an alcoholic, such action being unlawful discrimination against one with a handicapping condition under 5 U.S.C. § 2302(b)(1)(D),[2] and that the dismissal was instigated by a supervisor in reprisal for his revelations of the supervisor's abuse of authority, likewise a practice prohibited by 5 U.S.C. § 2302(b)(8)(A)(ii).

The matter is now before the Court on defendants' motion to dismiss or for summary judgment and plaintiff's cross-motion for judgment on the pleadings. Sufficient facts appear from the MSPB record and the pleadings to be without dispute for the purpose of the disposition made of the motions hereby, and for the reasons hereinafter set forth the Court will deny defendants' motion, grant the plaintiff's motion in part, and remand the case to the MSPB for reconsideration in accordance herewith.

I.

Walker began work for DPS in 1978. His transgressions against the agency's leave policy began approximately a year later, consisting for the most part of absences without leave ("AWOL"). He was disciplined with progressive severity on three occasions for a series of violations preceding each before receiving a "notice of proposed removal" on October 1, 1980.[3] Walker then revealed to DPS that he was an alcoholic, and the agency relented, re-

---

was transferred to this Court, upon petitioner's (i.e., plaintiff's) motion, on the ground that the joinder of the discrimination claim with the MSPB appeal renders the matter a "mixed case" of which only U.S. district courts have jurisdiction under 5 U.S.C. § 7702. *See Williams v. Department of the Army,* 715 F.2d 1485 (Fed.Cir. 1983).

**2.** It is undisputed that alcoholism is a handicapping condition. *See Ruzek v. General Services Administration,* —— M.S.P.R. ——, 7 MSPB 307 (1981).

**3.** Walker's disciplinary record preceding the notice of proposed removal consisted of:
1. One-day suspension on June 1, 1979, for:
   a. being six hours late on May 1, 1979;
   b. failing to report for duty on May 7, 1979; and
   c. being three hours late on May 9, 1979.
2. Five-day suspension on September 28, 1979, for:
   a. failing to report for duty on August 10, 1979;
   b. being six hours and six minutes late on August 13, 1979;

c. being 24 minutes late on August 16, 1979;
   d. being two hours and six minutes late on August 22, 1979; and
   e. being three hours late on September 10, 1979.
3. Ten-day suspension on August 28, 1980, for:
   a. failing to report for duty on May 27, 1980, June 23, 1980, June 25, 1980, and June 30, 1980;
   b. being four hours late on June 22, 1980; and
   c. being 18 minutes late on June 27, 1980.
The notice of proposed removal was issued on October 1, 1980 for:
   a. returning to work 30 minutes late on July 31, 1980;
   b. being 30 minutes late on August 11, 1980;
   c. refusing to remain at work after receiving paycheck; and
   d. failing to turn in leave slip for leave without pay ("LWOP"), and being absent for three days.

ducing his removal to a ten-day suspension and allowing him to be hospitalized under a government alcohol counselling and assistance program. Walker states, and defendants affirm, that alcohol ceased to be the cause of any of his work-related problems thereafter.

Approximately three months after his treatment concluded Walker was again charged with six additional violations of agency leave policy which culminated in his actual removal on July 3, 1981. He appealed to the MSPB on July 23, 1981. The MSPB official who presided at the hearing dismissed two charges—a February 4, 1981, AWOL and an April 13, 1981, "disobedience to constituted authority"—as not sustained by the evidence, and she reduced another charge of 54 minutes' AWOL to 15 minutes. The three remaining AWOLs were found to have been proved as charged, but, believing the penalty of removal to be "unduly harsh" given the relatively trivial nature of the offenses, the presiding official reduced the penalty to a 30-day suspension.[4] The Board disagreed with her, however, and reinstated DPS' decision to remove. Expressly adverting to, and adding, Walker's more serious pre-treatment record to the post-treatment violations, the Board found that removal was reasonable in the circumstances and would "promote the efficiency of the service." 12 MSPB 406.

## II.

Walker does not contest any portion of his disciplinary record incurred pre-treatment. He agrees that he committed the underlying violations and that (assuming he deserved punishment at all) the penalties were fair. As to the post-treatment violations remaining on his record after the MSPB proceedings, Walker similarly has no substantive dispute. He says only that, were it not for his supervisor's desire to be avenged for the complaints Walker had made about him, those modest infractions would not have incurred discipline at all.

His principal contention, however, is that the sanction of removal is excessive even in the absence of a retaliatory taint. Removal might be appropriate if his pre-treatment and post-treatment disciplinary record could properly be considered in the aggregate, he argues, but an indiscriminate combination of both sets of violations to justify a penalty supposedly proportionate to the total culpability they purport to reflect is inconsistent with the anti-discrimination statutes and regulations, because it effectively punishes him for what has been legislatively decreed an illness.[5]

As a "mixed case" involving both an original discrimination complaint and an MSPB appeal, each part of the case must be evaluated by a different standard. Walker's claim to have been a victim of discrimination as one "handicapped" by alcoholism comes to this Court for *de novo* determination. 5 U.S.C. §§ 7702(a)(1)(B)(iii), 7703(b)(2) and (c). The usual agency appeal standards govern the MSPB appeal from the alleged "prohibited personnel practices" of discrimination and reprisal: non-factual determinations must not be arbitrary, constitute an abuse of discretion, or be otherwise not in accordance with law, and factual determinations must be supported by substantial evidence. 5 U.S.C. §§ 7703(a)(1) and (c).

## III.

■ Defendants move to dismiss the complaint as untimely, because it was not

---

4. The four post-treatment violations remaining on Walker's record after the MSPB hearing were:

    1. Fifteen minutes of AWOL (attributed by Walker to a public transit delay) on April 9, 1981;

    2. Thirty minutes of AWOL (to cash a paycheck without receiving express permission to do so) on April 13, 1981;

    3. Four hours of AWOL (for going home without donating blood in accordance with permission; Walker claimed he was ill at the time); and

    4. One hour of AWOL (upon oversleeping).

5. Walker submits that if he had been suffering from any other malady, illness-related absences could not and would not have been counted for disciplinary purposes at all.

filed in *this* Court within the 30-day period afforded an aggrieved federal employee to seek judicial review of decisions of the MSPB under 5 U.S.C. § 7703(b)(2). The MSPB's decision, however, was served on plaintiff on December 30, 1982; his appeal to the U.S. Circuit Court of Appeals for the Federal Circuit was filed January 19, 1983. Although the instant complaint was not filed until November 1, 1983, it is clear (without having to consider whether circumstances might equitably excuse the lapse of time) that under 28 U.S.C. § 1631 the complaint here relates back to the date of Walker's timely appeal to the Federal Circuit, which transferred the case to this Court on September 29, 1983, upon the authority of one of its own cases it did not decide until approximately three weeks earlier.

Defendants next assert that Walker has failed to state a claim for handicap discrimination, because he does not allege that alcoholism was the *sole* basis for his removal. The Alcohol Rehabilitation Act does state that an alcoholic may not be denied employment "solely on the ground of prior alcohol abuse or prior alcoholism," 42 U.S.C. § 290dd–1(c)(1), which might semantically suggest that a history of inebriety coupled with any other dereliction places an employee beyond the protection of the statute. But the regulations make clear that what is intended is that an alcoholic is to be removed from federal employment, if at all, "solely on the basis of unsatisfactory job performance," after refusal of treatment or inadequate improvement, not because he is or was an alcoholic. FPM Supp. 792–2, subch. S5–1(b).[6]

A recent decision by another judge of this court demonstrates the interrelationship of the Rehabilitation and Alcohol Rehabilitation Acts as Congress intended them to bear upon alcoholic federal employees. In *Whitlock v. Donovan,* 598 F.Supp. 126, at 131 (D.D.C.1984), the court said: "These statutes viewed together in the light of their legislative history show Congress's firm intention to require federal employers to exert substantial affirmative efforts to assist alcoholic employees toward overcoming their handicap before firing them for performance deficiencies related to drinking."[7] Whether or not they create an affirmative duty to rehabilitate federal employees afflicted with alcoholism, however, they do require an agency, at a minimum, to "make reasonable accommodation to the known physical or mental limitations of a qualified handicapped applicant or employee unless the agency can demonstrate that the accommodation would impose an undue hardship on the operation of its program." 29 C.F.R. § 1613.704(a).

Defendants here assert that they "reasonably accommodated" Walker by re-

---

**6.** If an employee still suffers from alcoholism after treatment, he may be fired if he is incapable of "properly function[ing] in his employment." 42 U.S.C. § 290dd–1(d). In such a case, however, he would not be dismissed as an alcoholic but, rather, "solely on the basis of unsatisfactory job performance." FPM Supp. 792–2, subch. S5–1(b).

**7.** The court went on to summarize the statutory and regulatory obligations owing to federal employees whose work appears to be adversely affected by alcohol dependence:

[T]he agency is obligated first to offer counseling to the employee. If the employee rebuffs the offer, and if the deficiency in his work is such that discipline would be warranted, the agency should offer a "firm choice" between treatment and discipline. An agency is obligated to follow through with its firm choices. Since it is recognized that relapse is predictable in treatment of alcoholics, an agency is not justified in automatically giving up on an employee who enters treatment but who subsequently relapses. In such a case, the agency may follow through with discipline short of removal. However, the agency is obligated before removing the employee from its work force to evaluate whether keeping the employee presents an undue hardship under 29 C.F.R. § 1613.704. If removal seems to be the only feasible option, the agency is obligated to conduct a formal evaluation, including a fitness-for-duty examination if necessary, to confirm whether the employee's alcoholism disease is in fact responsible for the employee's poor performance. If so, the agency must offer leave without pay if the employee will seek more extensive rehabilitative therapy that seems promising, and the agency must also counsel the employee regarding disability retirement. *Id.* at 14–15.

ducing the intial proposed removal to a ten-day suspension and then allowing him to participate in a government-affiliated alcohol program. But an agency does not "reasonably accommodate" an alcoholic employee by keeping score of alcohol-induced, pre-treatment transgressions and reviving them post-treatment for purposes of cumulation with non-alcohol-related misconduct to produce an aggregate *disciplinary* record warranting more severe punishment. Pre-treatment records certainly remain relevant to gauge how successful treatment has been, or whether the disease process is so far advanced as to be unamenable to treatment or accommodation. In a disciplinary context, however, "reasonable accommodation" of an alcoholic employee requires forgiveness of his past alcohol-induced misconduct in proportion to his willingness to undergo and favorable response to treatment. Use of pre-treatment records conceded to be attributable to alcohol abuse for disciplinary purposes is inconsistent with the legislative perception of alcoholism as a disease, and behavioral problems a part of the symptomatology rather than the product of volitional acts of dissipation. *See McKelvey v. Walters,* 596 F.Supp. 1317 (D.D.C.1984). Moreover, knowledge that his employer may resurrect his alcohol-related infractions for penalty-enhancement purposes if he errs in the future may well be a disincentive for the alcoholic employee to enter, continue or complete necessary treatment.

■ Since the Court, in its review of the sufficiency of the MSPB's disposition of the discrimination claim as presented to it, and in advance of any *de novo* trial here,

has determined that DPS and the MSPB did not properly exclude pre-treatment violations from its compilation of Walker's disciplinary record upon which his removal was predicated, the agency decision must be remanded for reconsideration of an appropriate penalty on his record *sans* those offenses.[8]

Walker also claims that the tardiness and absences reflected in his post-treatment disciplinary record would never have risen to a level justifying any punishment, much less removal, absent his immediate supervisor's desire for revenge. Reprisal against an employee because of his disclosure of a suspected abuse of authority by a supervisor is likewise a prohibited personnel practice. 5 U.S.C. § 2302(b)(8)(A)(ii). Walker believes the reprisal was inspired by a letter he wrote to his supervisor's superiors in January, 1979, charging an abuse of authority, in consequence of which the immediate supervisor was required to offer Walker an apology.[9]

■ The MSPB failed to mention Walker's reprisal claim in either its initial decision or its final order which obviously found it without merit. In order for a court to review any agency decision, "the agency [must] articulate with reasonable clarity its reasons for decision, and identify the significance of the crucial facts .... [T]he court must not be left to guess as to the agency's findings or reasons." *Greater Boston Television Corporation v. FCC,* 444 F.2d 841, 851 (D.C.Cir.1970), *cert. denied,* 403 U.S. 923, 91 S.Ct. 2229, 29 L.Ed.2d 701 (1971). Since the MSPB failed to give any reason whatsoever for its implicit determination that no reprisal was

8. DPS's Deputy Director, the agency's deciding official who initially ordered Walker's removal, testified before the MSPB that the appropriate penalty would have been a reprimand or suspension had Walker had "no past history" [of alcohol-related infractions].

9. Defendants urge that the reprisal claim is also barred by time. A federal employee has only 20 days within which to appeal an adverse personnel action to the MSPB, 5 C.F.R. § 1201.22(b), and defendants contend that Walker did not raise the reprisal issue until his appeal was actually heard in September, following his dis-

missal in July. However, on page two of his MSPB appeal from, filed July 23, 1981, Walker says: "This action was based upon my supervisor's [sic] repeatedly subjecting me to discriminatory working conditions because I had made complaints about the manner in which he conducted the operation." Walker may not have used the word "reprisal," but there is no doubt a reprisal was what he was describing. It is also clear that the MSPB presiding official understood Walker's appeal to include a reprisal claim. MSPB Hearing Transcript at 123.

involved, the case must also be remanded to give it an opportunity to do so.[10]

For the foregoing reasons, therefore, it is, this 14th day of January, 1985,

ORDERED, that defendants' motion to dismiss or for summary judgment is denied; and it is

FURTHER ORDERED, that plaintiff's motion for judgment on the pleadings is granted in part, and MSPB Docket No. DC 07528110719 is remanded to the MSPB for reconsideration in accordance with the foregoing; and it is

FURTHER ORDERED, that this case is scheduled for a further status conference on April 15, 1985, at 9:30 a.m.

10. The presiding official found in favor of Walker on one AWOL and the disobedience charge, in part because they were sought to be proved by the testimony of the allegedly vengeful supervisor, using what the presiding official found to be a fabricated document. Such evidence may be as probative of reprisal as it is disprobative of the charges it was offered to support.