John TEAHAN, Plaintiff–Appellant–
Cross–Appellee,

v.

METRO–NORTH COMMUTER RAIL-
ROAD COMPANY, Defendant–
Appellee–Cross–Appellant.

No. 120, Dockets 91–7431, 91–7501.

United States Court of Appeals,
Second Circuit.

Submitted Aug. 29, 1991.

Decided Dec. 27, 1991.

C. Sue Barnett, Labor Counsel, Office of the Gen. Counsel, Metro–North Commuter R.R., New York City, filed a brief for defendant-appellee.

Patrick M. Wall, New York City (Graham, Campaign & McCarthy, P.C., New York City, of counsel), filed a brief for plaintiff-appellant.

Before OAKES, Chief Judge,
FEINBERG and CARDAMONE, Circuit Judges.

CARDAMONE, Circuit Judge:

■ Appellant is an alcoholic who claims that his disease constitutes a handicap under § 504 of The Rehabilitation Act of 1973. This section of the Labor Law aims to balance the statutory guarantee of equal opportunity for the handicapped person so that he or she may become a contributing member of the workforce against the rightful concern of an employer that is the recipient of federal funds to preserve the effectiveness of its programs. For an employer to assume that simply because of a handicap an individual is unable to function in a given employment context stereotypes that person, seeing him, as it were, through a glass, darkly. To view a handicapped person in such a simplistic way effects the discrimination forbidden by § 504. At the same time nothing in the statute prevents an employer from making a decision based on the job-related attributes of a person's handicap. It is the close interplay of these two notions, that is, between a handicap and its attributes, that we must analyze and resolve on this appeal.

## BACKGROUND

John Teahan was employed by Metro–North Commuter Railroad (Metro–North) as a telephone and telegraph maintainer from 1983 to 1988. Concededly, through these five years his alcohol and drug abuse led to his being unexcusedly absent from work on numerous occasions. Teahan agrees that his absences—19 in 1984, 47 in 1985, 58 in 1986, and 53 in 1987—were excessive. On March 7, 1986 appellant voluntarily enrolled in a 30–day rehabilitation program at Parkview Hospital in Yorktown Heights, New York. After his discharge from this program, he relapsed into further drug and alcohol abuse and continued to incur unauthorized absences from work.

Metro–North progressively disciplined Teahan for his absences, including warning letters, three and five day record suspensions, and 14 and 30 day actual suspensions. In the late fall of 1987 he informed his employer of his substance abuse problem.

The incidents of absenteeism giving rise to this litigation occurred in December, 1987. Teahan was absent without permission on December 10, 11, 17, and 18. On December 28, 1987 Metro–North charged Teahan by letter that his failure on those dates to notify his work location of his inability to come to work, in light of his previous record, constituted excessive absenteeism. On December 28—before receiving this charge letter—Teahan had voluntarily entered a substance abuse rehabilitation program at Conifer Park Rehabilitation Center in Scotia, New York (Conifer Park). This time appellant successfully completed the program and returned to work on January 28, 1988. From that date until his dismissal on April 11, 1988 he was not absent from work and appears to have otherwise fully performed the requirements of his job.

Meanwhile, following its charge letter, from December 28, 1987 to April 11, 1988 Metro–North pursued Teahan's dismissal under disciplinary procedures set forth in its collective bargaining agreement with the International Brotherhood of Electrical Workers (IBEW). *See* 45 U.S.C. § 151 *et seq.* It was only in accordance with this agreement that Metro–North had permitted Teahan to return to work on January 28.

IBEW appealed the April dismissal unsuccessfully through the two levels of review established under the collective bargaining agreement. The Special Board of Adjustment that heard the final appeal upheld the employer's actions, concluding that Teahan's dismissal due to excessive absenteeism was justified and that his "previous record [was] not supportive of any request for leniency and certainly cannot mitigate the sanction imposed." No reference was made in the decision to Teahan's work record since his successful completion of the Conifer Park program.

### THE PROCEEDINGS BELOW

Appellant filed suit against his employer Metro–North in the United States District Court for the Southern District of New York (Lowe, J.), alleging that his April 11, 1988 dismissal violated § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (Act). The complaint asserted that as a drug and alcohol abuser he was an "otherwise qualified individual with handicaps" covered by the Act, and that he was dismissed by Metro–North "solely by reason of" his handicap. Metro–North moved for summary judgment contending that appellant was unable to make out a *prima facie* case under § 504.

The district court granted Metro–North's motion on April 5, 1991. It ruled that § 504 required Teahan to prove that he (1) is a "handicapped person" under the Act, (2) who is "otherwise qualified," and (3) was terminated "solely by reason of" his handicap. Metro–North concedes Teahan's position is one that is part of a program receiving federal financial assistance, the fourth element of a § 504 claim. The district judge found genuine issues of material fact existed as to elements (1) and (2), but granted summary judgment in favor of Metro–North on element (3). With respect to this element, Judge Lowe believed Metro–North had not relied on Teahan's handicap and had shown a nondiscriminatory reason for firing him (excessive absenteeism), and that this shifted the burden of proof to Teahan to show that Metro–North's asserted reason was pretextual, which he failed to carry.

On appeal Teahan argues that because the ground upon which he was terminated was his excessive absenteeism, and since his absenteeism was "caused by" his substance abuse problem, the district court improperly shifted the burden to him to present evidence of pretext. We agree and for the reasons discussed below therefore reverse.

### DISCUSSION

1. Burden of Proof under § 504.

■ We start with the statute. Section 504 in relevant part provides:

No otherwise qualified individual with handicaps ... shall, solely by reason of her or his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

In *Doe v. New York University*, 666 F.2d 761 (2d Cir.1981), we laid out two alternatives to use in deciding discrimination suits under § 504, depending on whether the employer disclaims any reliance on the employee's handicap or acknowledges reliance on the handicap in its employment decision. Because the statute does not bar an employer from considering an employee's handicap, a § 504 action often is not susceptible to the burden-shifting order of proof regularly employed in discrimination suits. *See also Alexander v. Choate*, 469 U.S. 287, 298, 105 S.Ct. 712, 718–19, 83 L.Ed.2d 661 (1985) (handicapped persons are not ordinarily situated similarly to the nonhandicapped). Where an employer's actions have no relation to an employee's handicap, that is, where the employer "disclaims reliance" on the handicap, the analysis developed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), for suits under Title VII of the Civil Rights Act of 1964 is appropriate. In other words, at the final step the employee has the burden to prove that the employer's given reason for the action taken was a pretext for discrimination and the employee must show that the employer's action had a disparate impact. *See also Prewitt v. United States Postal Service*, 662 F.2d 292, 305 n. 19 (5th Cir.1981) (approving of disparate impact analysis in § 504 context).

■ Although Teahan concedes he offered no evidence of disparate impact or treatment, he nonetheless contends that summary judgment was improper because *Doe's* other § 504 approach should have been applied. His suit, he continues, is the more typical one where an employer acknowledges that in taking adverse action

against an employee it relied on plaintiff's handicap, which may be a permissible and appropriate factor to consider with respect to an employee's qualifications. In such cases, after complainant proves a *prima facie* case, the employer is required to rebut the inference that the handicap was improperly considered by demonstrating that it was relevant to the job qualifications. *See Doe*, 666 F.2d at 776; *Pushkin v. Regents of University of Colorado*, 658 F.2d 1372, 1387 (10th Cir.1981) (placing burden on defendant to show handicap-related inability of plaintiff to meet job requirements). The plaintiff, of course, bears the ultimate burden of proving that despite his handicap he is qualified. *See Doe*, 666 F.2d at 776–77.

The initial question then is whether Metro–North fired Teahan "solely by reason of" his handicap, thereby relying on his handicap. The district court concluded that because Metro–North terminated him on account of absenteeism, it was not relying on his alcoholism. The significant difference, as set forth above, is that where the employer relies on an employee's handicap for its employment decision, the employer has the burden of proving the handicap is relevant to the job requirements.

2. The "Reason" for Teahan's Dismissal

Teahan's contention that he was fired because he was an alcoholic presents a question of fact as to whether his excessive absenteeism was caused *solely* by his substance abuse. Only if the only reason for his absenteeism was appellant's alcoholism do we reach the second portion of his argument, that is, his claim that he was fired "solely by reason of" his handicap. Although the causal connection between absenteeism and alcoholism is ordinarily a question of fact, not properly capable of resolution under a Rule 56 motion, we must examine the facts in the light most favorable to the party against whom summary judgment was granted, and therefore assume the existence of the causal relationship here. *See, e.g., Bailey v. Hartford Fire Ins. Co.*, 565 F.2d 826, 830 (2d Cir. 1977). Hence, we must determine whether an employee who has excessive unexcused absences from work as the result of alcoholism is terminated "solely by reason of" his handicap when his employer relies on the absenteeism to terminate his employment. Analysis of the legislative purpose underlying the statute and of the case law interpreting § 504 suggests the answer is "yes."

■ We turn first to examine § 504 which simply provides that "an otherwise qualified handicapped individual" not be discharged from federally funded employment "solely by reason of his handicap." An employer obviously may not assume that because a person has a handicap, he or she is unable to function in a given work context. Although the Act forbids discrimination based on stereotypes, an employer is entitled to make employment decisions based on the "actual attributes of the handicap." *See Anderson v. University of Wisconsin*, 841 F.2d 737, 740 (7th Cir.1988). *See also Southeastern Community College v. Davis*, 442 U.S. 397, 405, 99 S.Ct. 2361, 2366, 60 L.Ed.2d 980 (1979) (Section 504 "indicat[es] only that mere possession of a handicap is not a permissible ground for assuming an inability to function in a particular context"); *School Bd. of Nassau County v. Arline*, 480 U.S. 273, 284, 107 S.Ct. 1123, 1129, 94 L.Ed.2d 307 (1987) (basic purpose of § 504 "is to ensure that handicapped individuals are not denied jobs or other benefits because of the prejudiced attitudes or the ignorance of others"). Metro–North insists that Teahan was terminated because of his excessive absenteeism, which it concluded was an actual attribute of his handicap.

We recognize that Metro–North may use its established criteria for employee performance without violating § 504. But it does not inevitably follow that termination for *conduct* resulting from a handicap is not termination "solely by reason of" that handicap. By equating the employer's motivation for firing with the employee's conduct, the relevant § 504 inquiry collapses; that is to say, absenteeism resulting from alcoholism is a factor that bears on whether an employee is "otherwise qualified" for the position, but absenteeism is irrelevant

to whether he was terminated in the first place "solely by reason of" his handicap.

The "solely by reason of" inquiry is designed to weed out § 504 claims where an employer can point to conduct or circumstances that are causally unrelated to the plaintiff's handicap. *See, e.g., Smith v. Barton,* 914 F.2d 1330, 1340 (9th Cir.1990) (employer's asserted reason budget constraints and restructuring); *Ross v. Beaumont Hosp.,* 687 F.Supp. 1115, 1118 (E.D.Mich.1988) (plaintiff's abusive behavior was significant factor in employer's decision); *Norcross v. Snead,* 573 F.Supp. 533, 544 (W.D.Ark.1983) (reasons for hiring individual other than plaintiff were greater experience and better prior work record); *Assa'ad–Faltas v. Com. of Va.,* 738 F.Supp. 982, 987 (E.D.Va.1989) (failure to allege her handicap served as reason for employer's actions precluded plaintiff from stating § 504 claim).

That an employee be terminated "solely by reason of" his handicap is a necessary element of a § 504 claim. But an employee may be terminated "solely by reason of" his handicap even though the employer disclaims any reliance on it. That is the reason why in such a case the employer has the burden of showing the handicap is relevant to the employee's work in order to rebut the inference that the handicap was improperly considered. A plaintiff is entitled to challenge as pretextual an assertion that the employer is not relying on the employee's handicap. But when the employer does not disclaim reliance on the handicap, the "solely by reason of" element is by definition satisfied. The question then becomes whether the employee is qualified despite his or her handicap to perform the essential functions of the job. *See Arline,* 480 U.S. at 287 n. 17, 107 S.Ct. at 1131 n. 17. The district court erred when it concluded that appellant was not fired "solely by reason of" his handicap. As a result of that ruling, Teahan was not given an opportunity to show that he was a handicapped individual protected by § 504 or that he was "otherwise qualified" for the position despite his alcoholism.

In assessing the reasons prompting the firing, the district court's discussion distinguishes between a handicap and its consequences. But the handicap and its consequences are distinguished for purposes of § 504 only in assessing whether or not the firing was discriminatory. If the consequences of the handicap are such that the employee is not qualified for the position, then a firing because of that handicap is not discriminatory, even though the firing *is* "solely by reason of" the handicap. *See* Wegner, *The Antidiscrimination Model Reconsidered: Ensuring Equal Opportunity Without Respect to Handicap Under Section 504 of the Rehabilitation Act of 1973,* 69 Cornell L.Rev. 401, 485 (whether defendant states legitimate, non-discriminatory reason for exclusion of plaintiff is one of causation, not justification).

An example may help to illustrate this point. An employee has one leg shorter than the other, causing him to limp, which we assume is a "handicap" under § 504. The limp causes the worker to make a loud "thump" when he takes a step. He is fired, his employer says, because of the thumping. Under the district court's analysis the employee may not maintain a suit under § 504 because the handicap is the limp, not the thump; hence the worker was not fired "solely by reason of" his handicap, but rather because of an attribute caused by the handicap.

This analysis misinterprets *Doe's* holding that when an employer "disclaims any reliance" on a plaintiff's handicap, the burden is automatically shifted to the plaintiff to disprove the employer's proffer of a legitimate (i.e., nondiscriminatory) reason for the termination. 666 F.2d at 776. "Disclaims any reliance" refers to *any reliance;* an employer "relies" on a handicap when it justifies termination based on conduct caused by the handicap. An employer does *not* "rely" on a handicap when it can point to behavior that is not causally related to that handicap.

Returning again to the limping employee, the district court's analysis would mean that when the employer disclaims reliance—in the absence of establishing the

employer's asserted reason as pretextual—the worker is not given an opportunity to show that he is "otherwise qualified." Yet, the proper analysis is that the causal connection between the limp (handicap) and the thump (symptomatic manifestation of the handicap) is such that the employer did "rely" on the handicap.

The difficulty with the district court's reasoning therefore is that it would allow an employer to "rely" on any conduct or circumstance that is a manifestation or symptomatic of a handicap, and, in so doing, avoid the burden of proving that the handicap is relevant to the job qualifications. The conduct associated with or which is a manifestation of a handicap is quite relevant, *as distinct from the handicap itself,* in assessing whether a worker is "otherwise qualified," and therefore, whether the termination was justified. For example, in this very case it may be that, despite two and one-half months of good work, there is sufficient likelihood of relapse, which together with job-related conduct, could render Teahan not "otherwise qualified." Any such conduct is, of course, *not* pertinent when assessing the reason for the termination. Numerous courts have at least implicitly agreed with this view insofar as § 504 suits have been entertained when an employee's termination was prompted by substance abuse-related or -induced conduct. *See, e.g., Rodgers v. Lehman,* 869 F.2d 253, 254 (4th Cir.1989); *Callicotte v. Cheney,* 744 F.Supp. 3, 4 (D.D.C.1990); *McElrath v. Kemp,* 741 F.Supp. 245, 246 (D.D.C.1989); *Nisperos v. Buck,* 720 F.Supp. 1424, 1426 (N.D.Cal. 1989); *see also Walker v. Weinberger,* 600 F.Supp. 757, 761 (D.D.C.1985).

■ We hold therefore that termination by an employer subject to the Act which is justified as being due to absenteeism shown to be caused by substance abuse is termination "solely by reason of" that substance abuse for purposes of § 504. In sum, whether or not absenteeism is "caused" by a handicap is a question of fact. We note that the relevant inquiry is into the causal connection of those absences. We need not now decide the precise contours of causality necessary to satisfy this element of a § 504 claim. If only a small percentage of Teahan's absences can be shown to have been "caused" by his alcoholism, and a sufficiently great number of absences are not so caused, such would provide grounds for Metro–North to terminate appellant as not prompted solely by reason of his handicap.

### 3. "Handicapped Individual"

■ Because the district court concluded that Teahan was not terminated "solely by reason of" his handicap and therefore failed to establish the third necessary element of his § 504 claim, it did not address whether Teahan was an "individual with handicaps" covered by the Act. As a preliminary matter, it is clear that substance abuse is a "handicap" for purposes of the Rehabilitation Act. *See, e.g., Rodgers,* 869 F.2d at 258; *Callicotte,* 744 F.Supp. at 4; *Walker,* 600 F.Supp. at 761; *Wallace v. Veterans Admin.,* 683 F.Supp. 758 (D.Kan. 1988); *Whitlock v. Donovan,* 598 F.Supp. 126, 129 (D.D.C.1984); 43 Op.Atty.Gen. April 12, 1977.

■ Metro–North asserts that despite his handicap, Teahan is not within the protection of § 504 due to the second sentence of § 706(8)(B). At the time of Teahan's dismissal this section provided that for purposes of § 504, as that section relates to employment, "handicapped individual"

does not include any individual who is an alcoholic or drug abuser whose current use of alcohol or drugs prevents such individual from performing the duties of the job in question ...[1]

Of course, if Teahan is not a "handicapped individual" covered by § 504, no claim un-

---

[1] In 1990, § 706(8)(B) was amended, Pub.L. 101–336 § 512(c), and § 706(8)(c)(i) now provides that "the term 'individual with handicaps' does not include an individual who is currently engaging in the illegal use of drugs, when [an employer] acts on the basis of such use," and § 706(8)(c)(v) now provides that "the term 'individual with handicaps' does not include any individual who is an alcoholic whose current use of alcohol prevents such individual from performing the duties of the job in question ..."

der that section may lie against Metro–North. *E.g. Arline,* 480 U.S. at 279, 107 S.Ct. at 1126; *Doe,* 666 F.2d at 774. The crux of the parties' competing viewpoints is whether or not Teahan was a "current" abuser of drugs and alcohol at the "relevant time."

Metro–North asserts that the "relevant time" to assess Teahan's status as a "current" abuser of alcohol and drugs is when the *decision* to terminate is made. That date here would be on December 28, 1987 when Teahan was notified that disciplinary charges would be brought—before he completed the Conifer Park program. On that date appellant was a current abuser of alcohol and drugs who, according to his employer, was not within the protection of § 504. *See Heron v. McGuire,* 803 F.2d 67, 69 (2d Cir.1986) (plaintiff whose current drug habit renders him unfit to perform job unprotected by § 504). Appellant insists, on the other hand, that the "relevant time" to assess his status as a substance abuser is on April 11, 1988 when he was *actually fired*—after successfully completing the Conifer Park program.

It is clear that insofar as the Rehabilitation Act evinces a general recognition of substance abuse as a disease, discrimination on the basis of such a handicap is antithetical to one of the goals of the Act— to ensure that handicapped persons are not victimized in the employment context by archaic or stereotypical assumptions concerning their handicap. *See Arline,* 480 U.S. at 284, 107 S.Ct. at 1129. But nothing in the language, history or precedents interpreting § 504 suggest that this provision is designed to insulate handicapped individuals from the actual impact of their disabilities. *See Alexander,* 469 U.S. at 300, 105 S.Ct. at 720 (*"Davis* struck a balance between the statutory rights of the handicapped to be integrated into society and the legitimate interests of federal grantees in preserving the integrity of their programs"). Consequently, we must be wary lest § 504 be applied as a haven to protect substance abusers who have not in the past sought—nor do they seek in the present—help. *See Burka v. New York City Transit Authority,* 680 F.Supp. 590, 597 (S.D.N.Y.1988).

It is against this background that the meaning of the word "current" in § 706(8)(B) must be determined. It would defeat the goal of § 504 to allow an employer to justify discharging an employee based on past substance abuse problems that an employee has presently overcome. *See Walker,* 600 F.Supp. at 762 (use of pretreatment alcohol-related problems for disciplinary purposes is inconsistent with legislative perception of alcoholism as a disease). The statute plainly is designed to protect rehabilitated or rehabilitating substance abusers from retroactive punishment by employers. *See Burka,* 680 F.Supp. at 599; *Nisperos,* 720 F.Supp. at 1427; *see also Tinch v. Walters,* 765 F.2d 599, 603 (6th Cir.1985) (a recovered alcoholic is an individual with handicaps within the meaning of the Rehabilitation Act). Yet, we recognize that the present facts pose a scenario different from that envisioned in the statute. Here, the employee's past substance abuse is relied on by the employer not to exact retroactive punishment, but to deal with a built-in delay between its decision to terminate Teahan and actual date of his release, attributable to its compliance with procedures mandated under its collective bargaining agreement.

Nevertheless, although we have found no case law addressing this point, we think the relevant time for assessment of Teahan's "current" status is the time of his actual firing. This view best comports with the legislative purpose of ensuring that rehabilitated or rehabilitating individuals are not discriminated against on the basis of past substance abuse. The provision excluding current substance abusers from the protection of § 504 ensures that the integration of the handicapped into the workforce is not an overly burdensome process, financially or otherwise, for the employer. *See Alexander,* 469 U.S. at 299–300, 105 S.Ct. at 719; *see also Heron,* 803 F.2d at 69. The relevant burden in this context is the extent to which an employer subject to the Act is required to alter its working environment and the impact such change would have on maintaining its own stan-

dards for acceptable job performance. *See, e.g., Davis,* 442 U.S. at 413, 99 S.Ct. at 2370 (section 504 "imposes no requirement upon an educational institution to lower or to effect substantial modifications of standards to accommodate a handicapped person").

The burden imposed upon Metro–North may not be deemed to outweigh the Act's purpose affording substance abusers an opportunity to overcome their handicap and become as fully integrated into the workforce as possible. In light of the fact that the procedures utilized by the IBEW were within the scope of those granted employees under the collective bargaining agreement, Metro–North's argument that it could not, by reason of its legal obligations, win the race to final discipline before the employee enters the sanctuary of a hospital is way wide of the mark. The reason for that delay in the case at hand is irrelevant; the pivotal inquiry is whether allowing the employee to utilize the delay to seek treatment unreasonably prejudices the employer.

The appellate procedures available to a disciplined employee under the labor agreement were known by Metro–North and were part and parcel of Teahan's employment. *See J.I. Case Co. v. National Labor Relations Board,* 321 U.S. 332, 335, 64 S.Ct. 576, 579, 88 L.Ed. 762 (1944) (a collective bargaining agreement "results in an accord as to the terms which ... govern [employment]"). His employment encompassed those review procedures he was entitled to invoke when the employer sought to initiate disciplinary action against him. As a consequence, appellant's employment was not terminated until these procedures had been complied with. *See John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 550, 84 S.Ct. 909, 914, 11 L.Ed.2d 898 (1964) ("the collective [bargaining] agreement covers the whole employment relationship").

We are unpersuaded that assessing Teahan's status as a current substance abuser as of the date of actual discharge amounts to such an interference with or is such an unfair surprise to Metro–North as to overcome the legislative goal of encouraging substance abusers to seek treatment. Further, because Teahan enrolled in the Conifer Park program before receiving official notice of disciplinary charges—and in light of his apparent recovery—we are loathe to classify him as a continuing substance abuser seeking a safe haven under § 504.

The language of the statute itself supports this conclusion. It was triggered upon Teahan's being "excluded from the participation in, ... denied the benefits of, or ... subjected to discrimination." It is more logical to rule that Metro–North's action that subjected it to § 504 was the date of Teahan's actual discharge, not the time when that decision was made.

It may well be, as Metro–North states, that the rule it "propose[s] would apply only where competing legal obligations prohibit the employer from acting immediately." We cannot share this optimism regarding any such rule that may be enunciated. Permitting an employer to raise competing obligations, legal or otherwise, as a reason preventing it from finally terminating an employee concurrently with the decision presents difficulties as to when that decision was made. In addition, adopting such an argument creates a potential loophole that exposes rehabilitating substance abusers to the type of retroactive punishment that the Act expressly seeks to prevent.

Moreover, a determination that Teahan's status as a current substance abuser is to be made as of the date of actual termination does not finally resolve the matter, as the legislative history of § 706 relating to current substance abusers states:

> [t]he provision is not intended to be limited to persons who use drugs on the day of, or within a matter of days or weeks before, the action in question. Rather the provision is intended to apply to a person whose illegal use of drugs occurred recently enough to justify a reasonable belief that a person's drug use is current.

H.R.Conf.Rep. No. 596, 101st Cong., 2d Sess. 87 (1990), *reprinted in* 1990 U.S.Code Cong. & Admin.News 267, 596.

■ As noted in footnote 1, § 706(8)(B) was amended so as to result in different sections covering illegal drug users and alcoholics. For purposes of the issues presented, this amendment has no substantive effect on our analysis. Thus, though the reference is only to illegal drug use, we regard this merely as a result of the statutory separation of illegal drug users and alcoholics, rather than as indicative of any congressional purpose to assess differently a "current" illegal drug user from a "current" alcoholic.

Hence, Teahan's status as a current substance abuser as of April 11, 1988 is a question of fact that requires resolution on remand. Specifically, it must be determined whether on the date of discharge Metro–North held a reasonable belief that Teahan had a current substance abuse problem. "Current" is to be determined in light of the section in which it appears; that is, whether the employee's substance abuse problem is severe and recent enough so that the employer is justified in believing that the employee is unable to perform the essential duties of his job.[2] *See Simpson v. Reynolds Metals Co., Inc.,* 629 F.2d 1226, 1231 n. 8 (7th Cir.1980); *Burka,* 680 F.Supp. at 600.

Undoubtedly, the resolution of this issue will in large part turn on several factors: the level of responsibility entrusted to the employee; the employer's applicable job and performance requirements; the level of competence ordinarily required to adequately perform the task in question; and the employee's past performance record. Distinct from the analysis undertaken when an employee is terminated "solely by reason of" his handicap is the examination required to determine whether an employee is a "current" substance abuser for purposes of § 706(8)(B). The latter examination involves a determination of how the conduct that is a manifestation or symptomatic of the handicap bears upon the employee's ability to perform the essential duties of his job. Consequently, if an employer reasonably can establish that, on the date an employee is finally terminated, his substance abuse problem is such as to prevent him or her from performing his essential duties, the employee then is a "current substance abuser" excluded from the coverage of § 504.

### 4. "Otherwise Qualified"

■ Because the district court concluded that Teahan had failed to establish one element of his § 504 claim, it did not decide whether Teahan was "otherwise qualified." Such is also a question of fact that must be resolved on remand. Only if it is found that Teahan was not a current substance abuser as of April 11 need the district court undertake to determine whether Teahan was, as of April 11, "otherwise qualified," in spite of his handicap, for the job in question. Relevant to resolution of this fact question is, for example, the likelihood of relapse and future absenteeism by Teahan, even if he was not as of that date a "current" substance abuser. *See Doe,* 666 F.2d at 777; *Anderson,* 841 F.2d at 740; *Mantolete v. Bolger,* 767 F.2d 1416, 1422 (9th Cir.1985); *cf. New York State Ass'n For Retarded Children v. Carey,* 612 F.2d 644, 650 (2d Cir.1979) (likelihood must be more than a "remote possibility").

The record does not reveal any job-related conduct other than absenteeism stemmed from Teahan's substance abuse. Yet our discussion should not be read as precluding the possibility that some other

2. The 1990 amendment excludes from coverage a current alcoholic "whose current use of alcohol prevents [him] from performing the duties of the job in question . . ." and a current illegal drug user "when [an employer] acts on the basis of such use." Because both types of substance abusers were previously similarly classified under § 706(8)(B), we find no reason to interpret "act[ing] on the basis of such [illegal drug] use" so as to encompass anything more or less than would justify termination of a "current" alcoholic. *See generally* 43 Op.Atty.Gen. April 12, 1977 (making no distinction between drug abusers and alcoholics for purposes of assessing whether manifestations of the handicap prevent individual from meeting basic requirements of position).

job-related manifestation of Teahan's abuse problem might be relevant in deciding whether he is "otherwise qualified." It is not possible to enumerate exhaustively all the factors that go into making such a determination for it requires consideration not only of the conduct that is symptomatic of the handicap, but also the work the employee performs and how the two interact. In other words, whether conduct is job-related depends as much on the job as on the conduct. Inasmuch as Teahan's responsibilities bear on public safety concerns, any conduct demonstrated to be a manifestation of his handicap that is likely to occur in the future and which may implicate those public safety concerns is a matter the district court should consider in determining whether he is "otherwise qualified."

The two questions of whether the substance abuse problem is current enough so as to preclude the employee from being able to perform the essential duties of his job as of the date of actual termination (a present-time inquiry), and whether the employee's handicap is such that he is not qualified to perform the essential duties of the job in question (a forward-looking inquiry), are not mutually exclusive. This is because whether an employee is adequately performing his job as of the date of termination for purposes of deciding whether he is a "current" substance abuser focuses on the individual employee and on how he is *presently* performing; whether the employee is "otherwise qualified" as of the date of termination is forward-looking and enables the employer to consider how the employee will perform as compared to non-handicapped individuals. *See Doe*, 666 F.2d at 776; *cf. Anderson*, 841 F.2d at 741 (relevant question in assessing if one is "otherwise qualified" is not whether student plaintiff can adequately perform, but whether defendant institution would have admitted student with same academic qualifications who was not handicapped).

Finally, we also note that although § 504 does not prevent an employer from requiring a handicapped employee be able to satisfy reasonable job-related requirements, *e.g., Prewitt*, 662 F.2d at 307; *Stutts v.*

*Freeman*, 694 F.2d 666, 669 (11th Cir.1983), a defendant will bear a heavy burden in attempting to show that freedom from past substance abuse, in and of itself, is an essential job-related requirement. *See Nisperos*, 720 F.Supp. at 1428–1429. The parties raise a question regarding the extent to which an employer's duty to "reasonably accommodate" the handicapped employee bears upon a determination as to whether the employee is "otherwise qualified." *See Davis*, 442 U.S. at 410–11, 99 S.Ct. at 2369; *Arline*, 480 U.S. at 287 n. 17, 107 S.Ct. at 1131 n. 17. This question need not be resolved until the district court first makes a finding as to whether Teahan was "otherwise qualified."

## CONCLUSION

Accordingly, the district court's judgment of April 9, 1991 granting summary judgment in favor of Metro–North is reversed and the case is remanded with directions to the district court to reinstate appellant's complaint and to conduct further proceedings consistent with this opinion.