**Vito D'AMICO, Plaintiff,**

**v.**

**The CITY OF NEW YORK; Joseph F. Bruno, Former Fire Commissioner The City of New York; Carlos Rivera, Current Fire Deputy Asst. Chief Matthew Murtach; Asst. Fire Commissioner Patricia Bartels, Defendant.**

**No. 92 Civ. 6485 (TPG).**

United States District Court, S.D. New York.

March 31, 1997.

Richard A. Glovin, New York City, for Plaintiff.

Judith C. McCarthy, Corporation Counsel of the City of New York, New York City, for Defendants.

### AMENDED OPINION

GRIESA, Chief Judge.

This is an action by a former firefighter with the New York City Fire Department ("FDNY"). Plaintiff D'Amico's main claim is violation of his rights under the Rehabilitation Act, 29 U.S.C. §§ 701 *et seq.* D'Amico also claims that defendants violated his constitutional rights under color of state law, and thus are liable under 42 U.S.C. § 1983.

Defendants move for summary judgment. The motion is granted and the action is dismissed.

#### Procedural History

D'Amico commenced this action in August 1992. He originally sued *pro se.* He retained counsel in January 1993 and an amended complaint was filed in February of that year.

Defendants moved for summary judgment in March 1995. Oral argument was held that

June. The court requested development of evidence on certain points. The submission of supplemental affidavits was completed on October 1, 1996.

## FACTS

The following facts are uncontested, unless otherwise noted. The principal source of the facts is contained in the statement filed by defendants pursuant to Rule 3(g) of the Civil Rules of this court. D'Amico has filed a counter-statement which concedes the truth of most of the items asserted by defendants.

D'Amico was appointed as a firefighter in 1982. In 1987 he began to use cocaine. At first this was about once a week. But by 1988 D'Amico snorted cocaine and "free-based" (i.e., smoked crack) almost daily. In April 1988 D'Amico was arrested for assault, possession of a controlled substance, and resisting arrest. Following this arrest, the FDNY referred D'Amico to counseling within the FDNY but he did not reveal the extent of his cocaine habit to the counselor at that time. The charges involved in the arrest were apparently dismissed.

In September 1988 the FDNY received an anonymous letter accusing D'Amico of using and selling cocaine. The FDNY ordered D'Amico to submit to a urine test on or about December 13, 1988. He tested positive for cocaine and was suspended without pay. In January 1989 D'Amico's suspension was lifted and he was reassigned to light duty pending the outcome of disciplinary proceedings. He never returned to active duty as a firefighter.

When D'Amico's suspension was lifted, the FDNY again referred him to department counseling. The FDNY arranged for D'Amico to enter an intensive out-patient drug treatment program at Smithers Alcoholism Treatment and Training Center.

On April 7, 1989 the Smithers facility wrote the FDNY stating that D'Amico had been discharged from Smithers for failure to comply with his treatment agreement. The letter noted that he engaged in "inappropriate behavior," and further that he was to have completed the intensive phase of his treatment on March 17, but was absent on March 16 and 17, and was not heard from thereafter for over a week, at which time he was discharged. The internal record of Smithers states that D'Amico admitted using alcohol on one occasion and cocaine on another occasion during the course of the program.

In his counter-statement under Rule 3(g) D'Amico denies making any admission about drug use at Smithers, and asserts that he was totally drug free "from December 14, 1988 to the date of his discharge" from the FDNY.

In the meantime, the FDNY had made certain Charges for Violation of Regulations against D'Amico. Charge No. 1 is dated November 10, 1988 and alleges that he was "absent without leave" in that on September 21, 1988 he failed to report to the Bureau of Health Services, in violation of Section 17.11 of the Regulations of the Uniformed Forces. Charge No. 2 is also dated November 10, 1988 and alleges that the conduct set forth in Charge No. 1 amounted to a violation of D'Amico's oath of office.

Charge No. 3 is dated March 3, 1989 and alleges that on or about December 13, 1988 D'Amico used a controlled substance prohibited by the New York State Penal Law, i.e., cocaine, in violation of § 25.1.6 of the Regulations. Charge No. 4 is also dated March 3, 1989 and alleges that the use of cocaine on or about December 13, 1988 violated the All Units Circular 202A of the FDNY.

The provisions of the cited Regulations and of the All Units Circular need not be quoted. They simply prohibit the conduct charged.

On March 4, 1989 D'Amico was notified that a pre-trial conference would be held on March 30 regarding the disciplinary charges, and such a conference was held.

On April 17, 1989 D'Amico returned to Smithers and entered an in-patient drug treatment program. This was on D'Amico's own volition in contrast to being referred by the Department. D'Amico completed the program on May 15. The FDNY was promptly notified of this by Smithers.

On June 1, 1989 the FDNY made Charge No. 5 against D'Amico, alleging that on March 30, 1989 he had knowingly and falsely

stated that he had not been discharged from Smithers.

A hearing on the disciplinary charges was held before Administrative Law Judge Ray Fleischhacker on June 23, 1989. Various witnesses testified regarding D'Amico's alleged misconduct. D'Amico did not testify nor did he call any witnesses in his defense.

The ALJ's Report and Recommendation was handed down on August 29, 1989. The ALJ found D'Amico guilty of Charges 1, 2, 3 and 4, and not guilty of Charge 5. The ALJ recommended that D'Amico be terminated from his employment with the FDNY. This recommendation was based upon Charges 3 and 4 dealing with the use of cocaine.

The ALJ discussed the information which the FDNY had received regarding D'Amico's cocaine usage. This discussion was mainly in connection with the issue of whether the FDNY was legally justified in requiring D'Amico to submit to the drug test in December 1988, a question which the ALJ answered in the affirmative. The ALJ referred to the anonymous letter which was received in September 1988 accusing D'Amico of using and selling cocaine, to testimony by Assistant Commissioner Bartels about D'Amico's extensive medical absences during 1987 and 1988, which fit a profile of possible drug use, and to further testimony by Bartels that she was aware of the April 1988 arrest and the dismissal of the charges. Due to an oversight D'Amico was not tested for drug use at the time of the arrest.

In the section of the ALJ's report dealing with the recommendation that D'Amico be terminated, the ALJ noted that D'Amico had involved himself in treatment for substance abuse following the 1988 test. The ALJ recognized that D'Amico had been dismissed from this program, although the ALJ apparently did not hold this against D'Amico, stating that the reasons for the dismissal were unclear. The ALJ described the fact that, subsequent to March 1989, D'Amico resumed and successfully completed drug treatment. Nevertheless, the ALJ recommended dismissal, stating:

> Given the nature of the respondent's position and the nature of the misconduct found herein, the only appropriate available penalty under section 15–113 of the Administrative Code is termination from employment. No other available sanction ensures the safety of the public and the respondent's fellow firefighters. Although the Department's policy regarding drug use, as set forth in PAID 1/84, encourages rehabilitation through referrals, it clearly permits the Department to elect to discipline members who use illegal substances. Therefore, any action less than termination of employment remains entirely within the Commissioner's discretion. Accordingly, I recommend that Firefighter Vito D'Amico be terminated from employment and be dismissed from the Civil Service.

On September 8, 1989 Fire Commissioner Joseph Bruno issued the Commissioner's Decision accepting the ALJ's findings and concurring with the recommendation that D'Amico be terminated. The Commissioner stated:

> In light of the grave responsibilities entrusted to a firefighter, the Respondent's continued employment with the Fire Department presents a significant risk, both to the general public and to his fellow firefighters.

D'Amico's employment at the FDNY was in fact terminated effective September 5, 1989.

## DISCUSSION

### The Rehabilitation Act

The Rehabilitation Act makes it unlawful for any entity receiving federal funds to discriminate against any "otherwise qualified individual with a disability." 29 U.S.C. § 794. To establish a prima facie case of employment discrimination under this statute, a plaintiff must prove that: (1) he is an "individual with a disability," (2) he was "otherwise qualified" for a position, (3) he was denied that position on the basis of his disability, and (4) the employer receives federal funds. See *Guice–Mills v. Derwinski*, 967 F.2d 794, 797 (2d Cir.1992); *Doe v. New York Univ.*, 666 F.2d 761, 774 (2d Cir.1981). There is no question in this case about the receipt of federal funds. The issues relate to the other elements.

It is well established that substance abuse is a disability for purposes of the Rehabilitation Act. *Teahan v. Metro–North Commuter R.R.*, 951 F.2d 511, 517 (2d Cir. 1991). Moreover, an employer may violate the statute by discharging an employee based on past substance abuse that an employee has overcome. *Id.* at 518.

The statute provides the following elaboration regarding drug usage:

(C)(i) For purposes of subchapter V of this chapter, the term "individual with a disability" does not include an individual who is currently engaging in the illegal use of drugs, when a covered entity acts on the basis of such use.

(ii) Nothing in clause (i) shall be construed to exclude as an individual with a disability an individual who—

(I) has successfully completed a supervised drug rehabilitation program and is no longer engaging in the illegal use of drugs, or has otherwise been rehabilitated successfully and is no longer engaging in such use;

(II) is participating in a supervised rehabilitation program and is no longer engaging in such use; or

(III) is erroneously regarded as engaging in such use, but is not engaging in such use;

except that it shall not be a violation of this chapter for a covered entity to adopt or administer reasonable policies or procedures, *including but not limited to drug* testing, designed to ensure that an individual described in subclause (I) or (II) is no longer engaging in the illegal use of drugs. 29 U.S.C. § 706(8).

Thus the statute basically provides that a person "currently engaged in the illegal use of drugs" does not have a disability within the meaning of the law. However, a person is not excluded from the benefits of the law who is participating in a rehabilitation program or has completed such a program *and* is no longer using illegal drugs.

The *Teahan* case dealt with a prior version of the statute worded somewhat differently from the current version, but the decision nevertheless shows how to define what is meant in the present statute by "currently engaging" in drug usage. The case makes it clear that the word "currently" refers to the time of actual termination, rather than to some earlier time when drug abuse was discovered or when there was a decision to terminate subject to administrative procedures. However, current use is not intended to be limited to persons who use drugs on the day of, or within a matter of days or weeks before, the employment action in question. If a person has used illegal drugs recently enough to justify a reasonable belief that the person's drug use is current, then he is not disabled within the meaning of the statute. *Id.* at 519–20.

Defendants argue that the present record is sufficient to demonstrate that D'Amico was "currently engaging in the illegal use of drugs" at the time of his termination. The trouble with this argument is that neither the ALJ nor the Commissioner found that D'Amico was currently using drugs at the time of the termination. Defendants are therefore not entitled to summary judgment on this point.

However, it is necessary to examine the second prong of the requirement of a prima facie case—*i.e.,* a showing that, not only was D'Amico an "individual with a disability," but he was "otherwise qualified" for the job he held.

In order to recover under the Rehabilitation Act, a handicapped person must show that, despite his handicap, he is "otherwise qualified" to perform the task in question. An obvious case would be a person who is unable to walk, but who gets about in a mechanized wheel chair. If that person is an in-house messenger, and if he can navigate through the various corridors and doors, perhaps with some reasonable accommodation, he is "otherwise qualified" to be an in-house messenger.

In deciding whether a person is "otherwise qualified" for a particular task, where there is a history of mental or emotional problems, or of drug abuse, an employer is justified in considering the possibility of relapse even though there is evidence of cure

or recovery. Moreover, the employer can properly give weight to the degree of danger involved in the type of work and the gravity of the consequences of a mishap. *Doe v. New York Univ.*, 666 F.2d 761, 777 (2d Cir. 1981); *Hogarth v. Thornburgh*, 833 F.Supp. 1077, 1086–87 (S.D.N.Y.1993).

The unique demands and responsibilities placed upon a firefighter are obvious, and the danger presented by a firefighter using cocaine is extreme. Any lapse from the highest degree of alertness may well result in serious injury or death to the victims of the fire, to other firefighters and to the firefighter himself.

In the present case the Commissioner, following the recommendation of the ALJ, based his decision on the grave responsibilities entrusted to a firefighter and the high degree of risk presented by D'Amico's recent history of cocaine usage. The Rehabilitation Act does not invite, much less require, that a court substitute its judgment for that of the FDNY with respect to the risk a recent cocaine user presents in firefighting activities. The court concludes that defendants have established, beyond any triable issue of fact, that D'Amico was not "otherwise qualified" within the meaning of the statute.

It should be noted that D'Amico makes a passing argument that other firefighters with drug problems have been accommodated, so that the remedy of termination was not justified as to him (Memorandum of Law In Opposition To Defendants' Motion p. 12). However, D'Amico does not develop this argument in the slightest degree in the direction of proposing some specific legally required accommodation for himself. His case is that he was fit to be a firefighter. The court holds that the Department did not violate federal law in determining otherwise.

*Constitutional Issues*

D'Amico's amended complaint makes two claims that his constitutional rights have been abridged under color of state law in violation of 42 U.S.C. § 1983: first, that the FDNY conducted an unreasonable search and seizure by ordering him to submit to a urine test without a reasonable suspicion of drug use; and second, that the FDNY denied his right to due process during the termi-

nation process by relying on an improper standard.

In his Memorandum of Law, D'Amico withdrew the claim that the urine test was wrongful. Therefore, only the due process claim remains to be considered.

D'Amico argues that he was denied due process in his administrative hearing because the ALJ applied the standard found in a Department policy statement and because this standard is in conflict with the Rehabilitation Act. What D'Amico is referring to is a portion of the ALJ's report, already quoted:

> Although the Department's policy regarding drug use, as set forth in PAID 1/84, encourages rehabilitation through referrals, it clearly permits the Department to elect to discipline members who use illegal substances. Therefore, any action less than termination of employment remains entirely within the Commissioner's discretion.

The document "PA/ID No. 1/84" is entitled "Department Policy Regarding Substance Abuse and Situational Stress." It sets forth, among other things, FDNY policy regarding assistance to employees who are having problems with alcohol or drug abuse. PA/ID No. 1/84 contains a detailed description of procedures for departmental counseling and, where appropriate, treatment in outside facilities. However, in the preamble there is the statement:

> The Commissioner retains the discretion to apply or not apply the following policy to any member of the uniformed force when the particular facts or circumstances of the individual case mandate or when the needs of the Department so indicate.

D'Amico contends that this passage is contrary to the Rehabilitation Act.

The first point to be made in response to this argument is that it does not raise a due process issue at all. To the extent that there is a question to be considered, that question is whether the FDNY, by means of its policy and by means of its action in the case of D'Amico, violated the Rehabilitation Act.

■ The court finds no merit in the contention that PA/ID No. 1/84 is contrary to

the Rehabilitation Act. The preamble which D'Amico criticizes simply says that the Commissioner reserves the discretion to apply or not to apply the provisions about alcohol and substance abuse treatment depending upon the needs of the Department. This is in no sense a contradiction of the Rehabilitation Act. The Rehabilitation Act surely does not impose an ironclad mandate that substance abusers be given treatment regardless of the needs of the Department.

In the present case, D'Amico was in fact referred by the Department to the Smithers facility for drug treatment. Thus the Commissioner did not elect to deny D'Amico the benefits of the treatment provisions in PA/ID No. 1/84.

The essential point made by the ALJ in his report was that PA/ID No. 1/84 does not prevent the Commissioner from disciplining a substance abuser. In fact, PA/ID No. 1/84 does not even purport to deal with question of discipline. It does not deal with the question of whether a firefighter should be disciplined before, during or after a treatment program has been completed. In the present case, as the court held earlier in this opinion, the Commissioner had the right to take into account all the circumstances, including D'Amico's drug abuse and his treatment, and was not in violation of the Rehabilitation Act in terminating D'Amico.

### CONCLUSION

For the foregoing reasons defendants' motion for summary judgment is granted and the action is dismissed.

SO ORDERED.