**Richard HAM, Plaintiff,**

**v.**

**STATE OF NEVADA, et al., Defendants.**

**No. CV–N–91–180–ECR.**

United States District Court,
D. Nevada.

Feb. 11, 1992.

Paul J. Malikowski, Reno, Nev., for plaintiff.

Page Underwood, Deputy Atty. Gen., Carson City, Nev., for defendants.

## ORDER

EDWARD C. REED, Jr., Chief Judge.

Plaintiff alleges that he was removed from the position of Chief of the Nevada Bureau of Alcohol and Drug Abuse ("BADA") in violation of the Rehabilitation Act of 1973 § 504, 29 U.S.C. § 794, and the due process clause of the fourteenth amendment. Specifically, Plaintiff claims that he lost his job because he was an alcoholic, although (he alleges) he was fully able to perform the duties of his office despite his affliction. Defendants' motion for summary judgment (document $7) argues that: 1) Plaintiff has failed to state a claim under the Rehabilitation Act, 2) Under state law Plaintiff had no property right in his job, and thus, the state's actions did not violate the due process clause of the fourteenth amendment, and 3) Defendants are immune from suit under the eleventh amendment.

## FACTS

Plaintiff was appointed to the position of "Bureau Chief, Bureau of Alcohol and Drug Abuse, Rehabilitation Division, Department of Human Resources" by the Director of the Department of Human Resources on August 1, 1977. He served in that capacity for almost twelve years until, on April 20, 1989, Plaintiff was reassigned to the position of "Chief of Planning, Evaluation and Program Development" under the State Legalization Impact Assistance Grant ("SLIAG") program. At the time of the transfer, the two positions shared the same salary and benefits.

On March 3, 1989, Plaintiff was arrested for driving under the influence of an intoxicating liquor and plead guilty to this criminal charge. Plaintiff requested administrative and/or sick leave time for the purpose of attending an inpatient alcohol treatment program. Later, Plaintiff enrolled in Alcoholics Anonymous and remains a member today. Upon returning to work on April 10, 1989, Defendant Griepentrog informed Plaintiff that he would be reassigned to SLIAG effective April 20.

Plaintiff appealed the transfer to the Director of the Nevada Department of Personnel and received an administrative hearing. The Hearing Officer dismissed the appeal for lack of subject matter jurisdiction, stating that since the BADA Chief position had been deemed to be an "unclassified" position under NRS 232.390 and NRS 458.040, the Hearing Officer lacked the authority to hear the complaint.

The Plaintiff resigned from his state employment on or about December 31, 1990. This law suit was filed April 16, 1991 (document # 1).

Plaintiff alleges that he is an alcoholic and was transferred from the BADA Chief job to the SLIAG job due to the handicap of alcoholism in violation of the Rehabilitation Act of 1973 § 504, 29 U.S.C. § 794. Defendants admit that they removed Plaintiff from his BADA Chief job due to his drunk-driving arrest and the ensuing publicity, but they deny that they knew that Plaintiff was an alcoholic or took action against him because of his alcoholism. Furthermore, Defendants argue that the suit is barred by the eleventh amendment and also that Plaintiff's fourteenth amendment claim fails because he had no property right in his job under Nevada law.

## THE REHABILITATION ACT CLAIM

To establish a prima facie case of discrimination under the Rehabilitation Act, a plaintiff must establish the following elements:

(1) The plaintiff is a "handicapped person" under the Act; (2) The plaintiff is "otherwise qualified" for participation in the program; (3) The plaintiff is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely

by reason of his handicap; and (4) The relevant program or activity is receiving Federal financial assistance.[1]

*Doherty v. Southern College of Optometry,* 862 F.2d 570, 573 (6th Cir.1988), *cert. denied,* 493 U.S. 810, 110 S.Ct. 53, 107 L.Ed.2d 22 (1989) (citing *Doe v. New York Univ.,* 666 F.2d 761, 774–74 (2d Cir.1981); *Pushkin v. Regents of Univ. of Colorado,* 658 F.2d 1372, 1384 (10th Cir.1981)). *Accord Reynolds v. Brock,* 815 F.2d 571, 574 (9th Cir.1987). In the employment context, this prohibition against discrimination on the basis of one's handicap applies to job assignments and any other term or condition of employment. *Recanzone v. Washoe County School Dist.,* 696 F.Supp. 1372, 1377 (D.Nev.1988).

### A. *The Burden of Proof in § 504 Cases*

The Second Circuit has developed a system for the analysis of claims under § 504 of the Rehabilitation Act. *See Teahan v. Metro–North Commuter R.R. Co.,* 951 F.2d 511 (2d Cir.1991); *Doe,* 666 F.2d 761.

In *Doe v. New York University,* 666 F.2d 761 (2d Cir.1981), we laid out two alternatives to use in deciding discrimination suits under § 504, depending on whether the employer disclaims any reliance on the employee's handicap or acknowledges reliance on the handicap in its employment decision.... Where an employer's actions have no relation to an employee's handicap, that is, where the employer "disclaims reliance" on the handicap, the analysis developed in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), for suits under Title VII of the Civil Rights Act of 1964 is appropriate....

[T]he more typical [case is] one where an employer acknowledges that in taking adverse action against an employee it relied on plaintiff's handicap, which may be a permissible and appropriate factor to consider with respect to an employee's qualifications. In such cases, after complainant proves a prima facie case, the employer is required to rebut the inference that the handicap was improperly considered by demonstrating that it was relevant to the job qualifications. See *Doe,* 666 F.2d at 776; *Pushkin* ... 658 F.2d [at] 1387.... The plaintiff, of course, bears the ultimate burden of proving that despite his handicap he is qualified.

*Teahan,* 951 F.2d at 514–15. The first type of case, known in Title VII law as "disparate impact" analysis, requires the plaintiff to show that the reason given by the employer for its action was a "pretext" for discrimination. *Id.* at 514. In contrast, the second type of case, where the employer relies on the employee's handicap in making its determination, shifts the burden to the defendant to show that the handicap is relevant to the job's requirements. *Id.* at 515. Thus, this threshold question is crucial in determining upon which party the law places the initial burden of proof.

■ At first glance it might seem that the instant case is difficult to classify under either line of cases. On the one hand, Defendants admit that their actions were based on Plaintiff's drunk driving conviction and the bad publicity that BADA received. On the other hand, Defendants deny that they took action against Plaintiff based upon his alcoholism. In fact, they argue, they were unaware at the time that Plaintiff was an alcoholic. However, "an employer 'relies' on a handicap when it justifies termination based on conduct *caused by the handicap.* An employer does not "rely" on a handicap when it can point to behavior that is *not causally related* to the handicap." *Id.* at 515 (emphasis added).[2] Since the drunk driving was a

---

1. Defendants do not challenge the fact that the BADA program receives federal funds.

2. The Second Circuit explains this test by way of an example. An employee has one leg shorter than the other, a handicap under § 504 that causes him to make a loud "thump" when he takes a step. The employer may not disclaim reliance on the handicap by claiming that the employee was fired because of the thumping, and not because he is handicapped. The thump is an attribute caused by the handicap and the employer does, in reality, rely on the handicap.

causally connected manifestation of the alleged handicap, Defendants actions were admittedly based upon Plaintiff's alcoholism. Thus, the instant case is one where the defendant relies on the handicap, and as such, the Defendants here have the burden of showing that the Plaintiff was not qualified to hold his position.

Also, since the court considers the merits of the case on Defendants' motion for summary judgment the moving party has the initial burden of establishing that there is no genuine issue of material fact. If this burden is met, the opposing party must set forth specific facts showing that there is a genuine and material issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The evidence before the court "must be viewed in the light most favorable to the [nonmoving] party," *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The court's role is simply to assess whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249, 106 S.Ct. at 2511.

### B. An "Individual With Handicaps"

■ The first element that the Plaintiff would have to show to make out a prima facie case under § 504 would be that he is an "individual with handicaps" under the Act.[3] There is no doubt that under present law substance abusers, including alcoholics, are "handicapped" for purposes of the Act. In 29 U.S.C. § 706(8)(C) the Act clearly contemplates that many drug and alcohol users will qualify as handicapped individuals under § 706(8)(B). Regulations promulgated by the Department of Labor under the Act list "alcoholism" as a "physical or mental impairment" under the definition of "handicapped individual." 29 C.F.R. § 32.3. *See also, Fuller v. Frank*, 916 F.2d 558 (9th Cir.1990) (alcoholism recognized as handicap under Rehabilitation Act of 1973); *Railway Labor Executives' Assoc. v. Burnley*, 839 F.2d 575, 591 (9th Cir.1988), *vacated on other grounds*, 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989) (same); 43 Op. Att'y Gen. 12 (1977) (same).

Defendants argue that even if Plaintiff meets the definition of an "individual with handicaps," Defendants were unaware at the time of the transfer that Plaintiff was an alcoholic. Whatever the merit of this argument, the record before the court is unclear. This fact, combined with the requirement that the court must view the evidence in the light most favorable to the nonmoving party, requires the court to deny summary judgment in favor of Defendants on this issue.

### C. The "Otherwise Qualified" Requirement

The statute prohibits the Defendants from discriminating against handicapped individuals who are "otherwise qualified." Rehabilitation Act § 504, 29 U.S.C. § 794. A "qualified handicapped individual" is "[w]ith respect to employment, an individual who is capable of performing the essential functions of the job or jobs for which he or she is being considered with reasonable accommodation to his or her handicap...." 29 C.F.R. § 32.3. Thus, courts must engage in a two-step yet interrelated analysis: first, whether the individual is capable of performing the essential functions of his or her job, and second, if not, whether that individual could perform the essential functions of the job with reasonable accommodations. *See School Bd. of Nassau County v. Arline*, 480 U.S. 273, 287–88, 107 S.Ct. 1123, 1130–31, 94 L.Ed.2d 307 (1987); *Doherty*, 862 F.2d at 574–75. Both determinations are questions of fact.

---

**3.** An "individual with handicaps" according to the Act is "any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment." 29 U.S.C. § 706(8)(B).

*Doherty,* 862 F.2d at 575; *Brennan v. Stewart,* 834 F.2d 1248, 1260 (5th Cir.1988).

1. Was Plaintiff "Otherwise Qualified?"

The Supreme Court first addressed the "otherwise qualified" issue in *Southeastern Community College v. Davis,* 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979). In *Davis,* the defendant denied plaintiff admission to a nursing program because of a serious hearing disorder. The Court ruled that "[a]n otherwise qualified person is one who is able to meet all of a program's requirements in spite of his handicap." *Id.* at 406, 99 S.Ct. at 2367. Based on the fact that the evidence indicated that the ability to quickly comprehend speech was an important and necessary qualification for a registered nurse, it was proper for defendant to deny plaintiff admission into the program due to her hearing impairment. *Id.* at 407–08, 414, 99 S.Ct. at 2367–68, 2371. In other words, she was not otherwise qualified.

Resolution of the instant case will primarily depend upon the otherwise qualified issue. The parties will likely argue whether or not one of the essential job functions of BADA Chief is to keep clear of public incidents that might give citizens occasion to question the validity and integrity of the program. However, there is no evidence before the court that would indicate that Plaintiff's drinking interfered with his day-to-day work duties. Nor is there any evidence the Plaintiff was intoxicated on the job or exhibited a history of absences or tardiness. The record, as it stands, does not cut either way. Therefore, the court must deny summary judgment on this issue as well.[4]

2. "Reasonable Accommodations"

Even if Defendants can show that Plaintiff's handicap made him not otherwise qualified the inquiry does not end there. Defendants must also show that Plaintiff could not have been made qualified through the use of "reasonable accommodations." Since reasonable accommodation is actually a sub-part of otherwise qualified analysis, the burden remains on Defendants. *Doherty,* 862 F.2d at 575.

The Supreme Court dealt with the reasonable accommodation issue in *Alexander v. Choate,* 469 U.S. 287, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985). Reviewing its previous holding in *Davis* the court concluded that

*Davis* thus struck a balance between the statutory rights of the handicapped to be integrated into society and the legitimate interests of federal grantees in preserving the integrity of their programs: while a grantee need not be required to make "fundamental" or "substantial" modifications to accommodate the handicapped, it may be required to make "reasonable" ones.

*Alexander,* 469 U.S. at 300, 105 S.Ct. at 720.

4. Defendants argue that an employer may terminate an employee for certain improper off-duty conduct without violating the Rehabilitation Act. *Richardson v. United States Postal Service,* 613 F.Supp. 1213 (D.D.C.1985) and *Guerriero v. Schultz,* 557 F.Supp. 511 (D.D.C.1983) clearly have no bearing on the present case. In *Richardson,* the plaintiff lost because he could not show that his conviction for attempted murder was causally connected to his handicap, alcoholism. 613 F.Supp. at 1215. *Guerriero* involved an employee of the Foreign Service who, because of his alcoholism and schizoid personality disorder, required treatment in the United States. Because of his self-acknowledged need for therapy he could not travel abroad, and thus, was not otherwise qualified for his job in the Foreign Service. 557 F.Supp. at 514.

Only *Huff v. Israel,* 573 F.Supp. 107 (M.D.Ga. 1983) resembles the present case. In *Huff* an employee of the city of Macon, Georgia was fired after multiple drunk driving convictions. The court denied his claim under § 504 but plainly for the wrong reason. The defendant had claimed that plaintiff was fired for the criminal convictions and not for his alcoholism. "To the extent that plaintiff contends that his being discharged due to his DUI convictions is the same thing as being discharged due to his alcoholism, his contention is patently without merit." *Id.* at 110. As explained earlier in this order, this kind of reasoning is faulty and clearly conflicts with present law. Being fired for behavior caused by one's affliction is the same thing as being fired for one's affliction. However, the court reached the correct result since, as it noted, defendant's action was based on the fact that plaintiff was unable to perform his duties at work. *Id.* Thus, Huff was released because he was not otherwise qualified. Perhaps realizing these problems, the Eleventh Circuit vacated the decision in *Huff.* 732 F.2d 943 (11th Cir.1984).

Since *Alexander* courts have recognized the paradox implicit in the Court's analysis of the phrase "otherwise qualified." "[W]e can no longer take literally the assertion in *Davis* that 'an otherwise qualified person is one who is able to meet *all* of a program's requirements in spite of his handicap.'" *Brennan*, 834 F.2d at 1261–62 (quoting *Davis*, 442 U.S. at 406, 99 S.Ct. at 2368–69) (emphasis in original). Since § 504 defendants must make reasonable accommodations, there will be cases where plaintiffs do not meet all of a programs requirements, but could with reasonable accommodations. Thus, "[t]he question after *Alexander* is the rather mushy one of whether some 'reasonable accommodation' is available to satisfy the legitimate interests of both the grantee and the handicapped person." *Id.* 834 F.2d at 1262.

There are two facets to the reasonable accommodation question in the present case. First, the parties must argue whether or not Plaintiff's transfer from BADA Chief to SLIAG was in itself a reasonable accommodation. If it was not, a second issue arises, namely, whether or not Defendants could have made reasonable accommodations that would have allowed Plaintiff to remain as BADA Chief. Obviously "[i]n the context of alcoholism, 'reasonable accommodation' must be limited in scope; continued 'accommodation' would simply enable an alcoholic to continue his or her drinking." *Fuller*, 916 F.2d at 561. However, Plaintiff might have shown at trial that Defendants could have taken other reasonable steps to accommodate the Plaintiff, short of allowing him to continue drinking, that would not have compromised the integrity of the BADA program. Based on the scant record presently before the court, Defendants' motion for summary judgment must be denied as to the "reasonable accommodation" issue.

### D. *"Solely by Reason of His Handicap"*

"[T]he basic purpose of § 504 ... is to ensure that handicapped individuals are not denied jobs or other benefits because of the prejudiced attitudes or ignorance of others." *Arline*, 480 U.S. at 284, 107 S.Ct. at 1129. "[M]ere possession of a handicap is not a permissible ground for assuming an inability to function in a particular context." *Davis*, 442 U.S. at 405, 99 S.Ct. at 2366. Plaintiff alleges that Defendants summarily transferred him because of his handicap. He must prove at trial, however, that Defendants took such action *solely* by reason of his handicap. Rehabilitation Act § 504, 29 U.S.C. § 794.

As explained previously in this order, Defendants admit that they transferred Plaintiff due to his drunk driving conviction. The court also indicated that if a defendant acts on the basis of conduct caused by the handicap, it is the same as if that defendant acts on the basis of the handicap itself. The court is not prepared to rule on such an incomplete record that Defendants acted solely by reason of Plaintiff's handicap. Plaintiff will have to prove that the criminal conviction is causally related to his alcoholism. In any event, the facts are in dispute and the court must again deny Defendants' motion for summary judgment on this issue.

### THE DUE PROCESS CLAIM

Plaintiff alleges that he had a property interest in his job which Defendants unfairly denied him without due process of law. Defendants claim that Plaintiff was an "unclassified" employee under the Nevada state employment scheme who served at the discretion of the Rehabilitation Division Administrator and the Department of Human Resources Director.

> In order to have a property interest in a benefit, a person must have more than a need, desire or expectation of it, they must have a legitimate claim of entitlement to it. [*Board of Regents v. Roth*, 408 U.S. 564,] at 577, 92 S.Ct. 2701, at 2709, 33 L.Ed.2d 548.... Entitlements ... arise from statutes, ordinances, regulations or express or implied contracts.... [*Roth v. Veteran's Admin. of United States*, 856 F.2d 1401, 1409 (9th Cir.1988)].

*Lucero v. Hart*, 915 F.2d 1367, 1370 (9th Cir.1990). *Accord Gabe v. Clark County,*

701 F.2d 102, 103 (9th Cir.1983). A trial court should look to state law to determine whether such an entitlement exists. *Brady v. Gebbie,* 859 F.2d 1543, 1548 (9th Cir.1988), *cert. denied,* 489 U.S. 1100, 109 S.Ct. 1577, 103 L.Ed.2d 943 (1989).

The Nevada state civil service system is divided into two classes of employees, "classified" and "unclassified." *See* NRS Chapter 284. It is clear that the statutes afford classified employees a great number of protections. The issue here is whether unclassified employees may justifiably expect the same degree of protection that classified employees enjoy.

All Rehabilitation Division Bureau Chiefs, such as BADA Chief, are appointed by the Rehabilitation Division Administrator, with the consent of the Director of the Human Resources Department, and are considered "unclassified" employees under state law. NRS 232.390. The Nevada Supreme Court has made it clear that the jobs of unclassified employees are not protected to the same degree as unclassified employees. In *Nigro v. State Bd. of Cosmetology,* 103 Nev. 496, 746 P.2d 128 (1987), an inspector hired by the State Board of Cosmetology was fired for alleged unethical behavior after a summary proceeding. In rejecting Nigro's argument that he was entitled to certain administrative and procedural safeguards under Nevada's personnel system, the court distinguished between classified and unclassified employees:

> [H]is name was *not* on a "classified" list; he was not hired through the State Department of Personnel; *and,* he did not take a civil service examination.... In sum, Nigro has not fulfilled a single requirement that employees must undertake to become qualified for the "classified" service of the state.

*Id.* at 498, 746 P.2d 128.

Similarly, in the present case Plaintiff served as an appointed official, not as a protected or "classified" civil servant. Under state law his position was considered

unclassified. His position cannot be considered the same as that of a classified employee who applied for a position through the State Department of Personnel, took a civil servant test, submitted to an interview, competed with other applicants, etc. His job existed the moment that the Director of Human Services affirmed the recommendation of the Rehabilitation Division Administrator. Based on the analysis set forth in the Nevada Revised Statutes and in *Nigro,* the court concludes that Plaintiff had no reasonable expectation of a property interest in his job.[5] Thus, his due process claim based on such an interest must fail. The court grants Defendants' motion for summary judgment on this issue.

### IMMUNITY UNDER THE 11th AMENDMENT

Although the arguments of Defendants' counsel are well-crafted and informative, they are no longer good law. In 1986 Congress passed the Civil Rights Remedies Equalization Act which specifically states:

> A state shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 794 of Title 29.... [R]emedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such a violation in [a] suit against any public or private entity other than a State.

42 U.S.C. § 2000d–7(a). Thus, the court denies Defendants' motion for summary judgment on this issue.

IT IS, THEREFORE, HEREBY ORDERED that Defendants' motion for summary judgment (document # 7) is GRANTED with respect to the 42 § 1983 claim under the due process clause of the fourteenth amendment only. The motion for summary judgment is DENIED in all other

---

**5.** *See also Brady,* 859 F.2d at 1547–48 (state medical examiner did not have property interest in job requiring due process termination where position was unclassified civil service position); *McLeod v. Chilton,* 132 Ariz. 9, 643 P.2d 712, *cert. denied,* 459 U.S. 877, 103 S.Ct. 172, 74 L.Ed.2d 141 (1982) (state meat inspector who served at pleasure of his appointing authority was "at will" employee exempt from state civil service protections).

respects and as to all other issues and claims.