Robert E. **MADDOX,** III, Plaintiff,

v.

**UNIVERSITY OF TENNESSEE,** et al., Defendants.

No. 3–93–cv–0276 (jury).

United States District Court, E.D. Tennessee.

May 31, 1994.

John D. Lockridge, Jr. and Scarlett A. Beaty, Lockridge, Becker & Valone, PC, Knoxville, TN; and Robert E. Maddox, pro se, Louisville, KY, for Plaintiffs.

Karen E. Holt, Beauchamp E. Brogan, and Ronald C. Leadbetter, University of Tennessee, Office of General Counsel, Knoxville, TN, for Defendants.

### MEMORANDUM OPINION

JORDAN, District Judge.

In this civil action, the plaintiff Mr. Maddox sues the defendant university, its board of trustees, and its athletic director, Mr. Dickey, for relief under the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.,* and the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 701, *et seq.* Mr. Maddox alleges that he was discharged from a position as one of the university's assistant football coaches because he suffers from the disability of alcoholism.

The action is presently before the court for consideration of the defendants' motion for summary judgment [doc. 7], in support of which the defendants have filed their brief [doc. 8]. Attached to the defendants' motion are the affidavit of the defendant Mr. Dickey, one made by the university's former head football coach, John T. Majors, and a copy of the transcript of the plaintiff Mr. Maddox' discovery deposition taken in this civil action on October 5, 1993.

The plaintiff has filed a response [doc. 21] to this motion for summary judgment, and a brief in support of his response [doc. 22]. Attached to his brief are his affidavit, the affidavit of Trent Walters, the defendants' responses to the plaintiff's first interrogatories and requests for the production of documents, and a copy of the transcript of his discovery deposition. The defendants have filed a short response brief [doc. 23].

The motion for summary judgment is thus ripe for consideration. The court finds that oral argument would not assist it in ruling on the issues presented.

### I

█ Consideration of the defendants' motion must begin with a review of those facts which are undisputed, viewed in the light most favorable to the plaintiff.

On February 17, 1992, the defendant Mr. Dickey, acting as the university's athletic director, extended to the plaintiff an offer of employment as an assistant football coach. Mr. Dickey made this offer in a letter, in which he wrote, "The position to which you are being appointed does not carry tenure and is terminable at will in accordance with procedures stated in the Personnel Policies and Procedures Manual."

At the foot of the letter were lines for the plaintiff's signature and the date, by which he was to indicate his acceptance of the offer. The plaintiff Mr. Maddox signed this letter, and dated his signature on February 27, 1992.

Mr. Maddox completed an application for the assistant coach's position, on the university's form entitled "Application for Adminis-

trative and Professional Positions," on February 25, 1992, according to the date on the application. On the line after "Describe any health problems or physical limitations, which even with reasonable accommodation, would limit your ability to perform the duties of the position for which you are applying," Mr. Maddox wrote, "None." In response to the question on the form, "Have you ever been arrested for a criminal offense of any kind?," Mr. Maddox checked the box marked "No".

These responses were not accurate. According to what he alleges in this lawsuit, Mr. Maddox has suffered from the disability of alcoholism since before he came to the University of Tennessee. He received treatment for this at least once while he was working in one of his previous jobs.

However, at his deposition, Mr. Maddox insisted that his response to the first question was accurate, because "[i]t has never affected my coaching ability.... I never drank on the job."

The plaintiff was arrested three times before 1992, once for possession of a controlled substance, during the period of time when he was a professional football player, and twice for driving a motor vehicle under the influence of alcohol.

While the plaintiff's application for employment states that he received the M.A. degree from Miami University, Miami, Florida, the plaintiff testified at his discovery deposition that he had not completed his course work for a master's degree at the University of Miami.

The plaintiff Mr. Maddox testified at his deposition that the university's head football coach, Mr. Majors, offered him employment as an assistant football coach, and that this offer was made before the plaintiff met with the defendant Mr. Dickey or received Mr. Dickey's February 17, 1992, letter. The plaintiff apparently takes the position, which the court must accept at this stage, that he accepted the university's offer extended through Mr. Majors before he completed his application for employment, and that his written application was therefore a formality,

not an inducement to the university's agreement to hire him.

The plaintiff says also that another university employee, Bill Higdon, advised him not to include in his application information concerning his prior arrests. There is no evidence that Mr. Majors or Mr. Dickey knew of the plaintiff's prior arrests when the university hired him. There is no evidence that any individual at the university with managerial responsibility had any knowledge that the plaintiff might suffer from the disability of alcoholism.

Very early on Tuesday morning, May 26, 1992, a Knoxville police officer arrested the plaintiff, and charged him with driving under the influence of alcohol. According to newspaper reports of the incident, the plaintiff backed his automobile across a public road at a high rate of speed, almost striking another vehicle. When stopped by the officer, the plaintiff was combative, and refused to take a breathalyzer test. The plaintiff lied to the officer, stating that he was unemployed. The arresting officer wrote on the warrant that the plaintiff's clothing was disorderly and his pants were unzipped.

This incident was publicized, no doubt to the defendant university's discomfort. An essayist or editorial writer criticized the university in the May 31, 1992, *Knoxville News–Sentinel,* writing that the university should take immediate disciplinary action against Mr. Maddox, "to send a message about alcohol abuse."

Mr. Maddox testified at his deposition that on the Friday after his arrest, he met with his immediate supervisor, Mr. Majors, and that Mr. Majors told him that so long as he, the plaintiff, completed a rehabilitation program, he would continue to be permitted to coach football players. Mr. Maddox stated that Mr. Majors never referred to the publicity concerning Mr. Maddox' arrest. The plaintiff testified that later that evening, he talked with the defendant Mr. Dickey by telephone, and that Mr. Dickey likewise did not mention the publicity, but did state to Mr. Maddox, in response to the plaintiff's statement that he was an alcoholic, that Mr. Maddox did not have a problem with alcohol.

On the following Monday, Mr. Maddox entered a hospital to begin his course of rehabilitative treatment. He spent two weeks in the hospital and two in a halfway house, followed by visits to an outpatient service. About two weeks into this course of treatment, the plaintiff received a call from Mr. Majors, who told him that he was being placed on administrative leave. Mr. Maddox later received a letter from Mr. Dickey and Mr. Majors, dated June 22, 1994, in which the writers stated, "This is to inform you that your employment with The University of Tennessee Athletic Department has been terminated as of July 31, 1992." According to Mr. Maddox, no one ever told him why this action was taken, except that a trainer in the university's athletic department, Mr. Kerrin, now deceased, "told me that Coach Dickey and a couple of the people from the Board of Trustees and Athletic Association wanted to get rid of me as fast as possible so they wouldn't have to deal with having another alcoholic in the program." The plaintiff does not know how Mr. Kerrin acquired this knowledge.

At his deposition, Mr. Maddox denied that as an assistant coach, he had any responsibility for serving as a role model to student athletes, or counseling them. This disputes the affidavit testimony of Mr. Dickey and of Mr. Majors concerning what they expected of the plaintiff as an assistant football coach. In his deposition testimony, the plaintiff named two other football coaches employed by the defendant university who have, he said, been convicted of driving under the influence of alcohol, but who have kept their positions notwithstanding.

In his affidavit filed in this civil action, Mr. Maddox added some detail to his version of the defendant university's hiring of him. The plaintiff states in his affidavit that Mr. Majors pressed him on the date of their meeting to commit to coming to work for the university, and that Bill Higdon of the university later told him, when he was given an employment application form, to backdate his form to February 25, 1992. According to the plaintiff, Mr. Higdon instructed him to give a negative answer to the application question concerning prior arrests, and "[p]rior to the time that I was given this form to fill out, Bill Higdon had told me on February 17, 1992, that they knew that I had been convicted of a DUI but not to worry about it because it had been 'taken care of.'"

The position of the defendants concerning the termination of Mr. Maddox' employment is stated clearly in Mr. Dickey's affidavit:

My concurrence in the decision to terminate Maddox's employment was based solely on the actions which I believed that he had engaged in during the course of his DUI arrest on May 26, 1992 (as reported in the newspaper articles ...), his prior undisclosed DUI arrests, and my judgment that Maddox could no longer effectively carry out the responsibilities of an assistant football coach at The University of Tennessee.

Neither alcoholism nor any treatment Maddox may have received for that alcoholism or claimed alcoholism played any role whatever in my decision to concur in the decision to terminate Maddox's employment.

Mr. Dickey added that had he known of the plaintiff's prior convictions, he would not have employed him.

There is no evidence that Mr. Maddox discussed alcoholism with any of his superiors at the University of Tennessee, or sought rehabilitative treatment, before the incident in which he was arrested for driving under the influence of alcohol. Mr. Dickey states in his affidavit,

Moreover, at no time prior to his termination did Maddox advise me that he had a disability due to alcoholism, and at no time did he request that I provide him any form of assistance or "reasonable accommodation" in that regard. Prior to Maddox' May 26, 1992 DUI arrest, he and I had no discussion whatever regarding the subject of alcoholism and I had no information from any source that Maddox was afflicted by alcoholism.

Mr. Majors' affidavit testimony is consistent with this.

The plaintiff has submitted the affidavit of Trent Walters, a coach employed by the Minnesota Vikings professional football team,

and a former coaching colleague of the plaintiff, to establish that while Mr. Maddox and Mr. Walters were coaching at the University of Louisville, the fact that Mr. Maddox was a recovering alcoholic undergoing treatment did not interfere with his performance of his coaching duties.

## II

■ In considering the defendants' motion for summary judgment, the court must determine whether there is any genuine issue of material fact which merits a trial. The court's inquiry is the same as that applied in considering a Fed.R.Civ.P. 50 motion for judgment as a matter of law; the question is whether the evidence shows sufficient disagreement to justify resolution by a jury, or whether it is so one-sided that the moving party must prevail as a matter of law. *Street v. J.C. Bradford & Company,* 886 F.2d 1472, 1479 (6th Cir.1989) (footnote omitted). The opponent of the Rule 56 motion must present affirmative evidence in opposition to it, and must produce more than a scintilla of such evidence to overcome the motion. *Id.* (footnotes omitted).

■ "The burden is on the moving party to conclusively show that no genuine issue of material fact exists, and the Court must view the facts and all inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Spence v. Miles Laboratories, Inc.,* 810 F.Supp. 952, 956 (E.D.Tenn. 1992) (citations omitted) (*per* Edgar, J.). Nevertheless, where the record taken as a whole could not lead a rational trier of fact to find in favor of the nonmovant, the court must grant the motion. *Street v. J.C. Bradford & Company, supra,* 886 F.2d at 1480 (footnote omitted).

## III

The Rehabilitation Act of 1973, as amended, mandates, in 29 U.S.C. § 794(a), that "[n]o otherwise qualified individual with a disability in the United States, ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimina-

tion under any program or activity receiving Federal financial assistance...." It is clear, and is not disputed in this case, that the University of Tennessee constitutes such a program or activity in this case, regardless of whether any federal funds are used by the university's athletic department. 29 U.S.C. § 794(b)(2)(A); *see also DeVargas v. Mason & Hanger–Silas Mason Co., Inc.,* 911 F.2d 1377 (10th Cir.1990), *cert. denied,* 498 U.S. 1074, 111 S.Ct. 799, 112 L.Ed.2d 860 (1991).

An individual with a disability is any person who has a physical or mental impairment which substantially limits one or more of his or her major life activities, or who has a record of such an impairment, or who is regarded as having such an impairment. 29 U.S.C. § 706(8)(B). However, for the purposes of this litigation, the term "does not include any individual who is an alcoholic whose current use of alcohol prevents such individual from performing the duties of the job in question or whose employment, by reason of such current alcohol abuse, would constitute a direct threat to property or the safety of others." 29 U.S.C. § 706(8)(C)(v).

The elements of a cause of action under section 504 [of the Rehabilitation Act] are as follows: (1) The plaintiff is a "handicapped person"[1] under the Act; (2) The plaintiff is "otherwise qualified" for participation in the program; (3) The plaintiff is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely by reason of his handicap; and (4) The relevant program or activity is receiving Federal financial assistance.

*Doherty v. Southern College of Optometry,* 862 F.2d 570, 573 (6th Cir.1988), *cert. denied,* 493 U.S. 810, 110 S.Ct. 53, 107 L.Ed.2d 22 (1989) (citations omitted); *accord, Pesterfield v. Tennessee Valley Authority,* 941 F.2d 437, 441 (6th Cir.1991).

■ In this judicial circuit, the issues of whether a Rehabilitation Act plaintiff is an otherwise qualified disabled individual and of whether a defendant employer is able to reasonably accommodate its disabled employee are intertwined. Whether a plaintiff is

1. "Individual with a disability" is the modern statutory term.

otherwise qualified depends on whether he or she can meet the necessary requirements of a position, and what are the necessary requirements of a position depends on the extent to which an employer can satisfy the legitimate interests of both itself and the disabled employee. *See Doherty v. Southern College of Optometry, supra,* 862 F.2d at 574–75.

■ While the plaintiff bears the burden of coming forward with some evidence to show the existence of these elements of a Rehabilitation Act cause of action in this case, the court does not require the plaintiff to establish that any discrimination practiced by the defendants was intentional. Although the Rehabilitation Act, insofar as it applies to federal employees, incorporates the rights, remedies, and procedures of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq., see* 29 U.S.C. § 794a(a)(1), and therefore requires proof of discriminatory intent *as in a* Title VII case, *Pesterfield v. Tennessee Valley Authority, supra,* 941 F.2d at 443, this civil action is governed by 29 U.S.C. § 794a(a)(2), which makes the rights, remedies, and procedures of Title VI of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000d, *et seq.,* applicable to actions brought by employees of federal assistance recipients. Proof of discriminatory intent is not required in a Title VI case. *Guardians Association v. Civil Service Commission of the City of New York,* 463 U.S. 582, 103 S.Ct. 3221, 77 L.Ed.2d 866 (1983).

■ A *prima facie* case under the Rehabilitation Act requires proof of an adverse action, such as termination of the plaintiff's employment, solely on the basis of the plaintiff's disability. *Landefeld v. Marion General Hospital, Inc.,* 994 F.2d 1178, 1181 (6th Cir.1993). If the defendant comes forward with evidence of one or more non-discriminatory reasons for its action, then the plaintiff bears the burden of showing that the reasons advanced by the defendant are merely pretextual. *Id.*

■ A case from the Court of Appeals for the First Circuit, *Taub v. Frank,* 957 F.2d 8 (1st Cir.1992), highlights the distinction between a disability, which may not be the cause of an adverse employment action, and conduct on the part of an otherwise qualified individual with a disability, which may justify the same adverse action as it would justify against an employee with no disability. In *Taub v. Frank,* the United States Postal Service terminated the plaintiff Taub's employment for possession of heroin. After the postal service advised the plaintiff of its intent to discharge him on this ground, Taub informed the postal service that he was an individual with a disability by reason of drug addiction.

The court of appeals affirmed the district court's grant of summary judgment, and upheld the postal service's discharge of Taub. It held, first, that Taub was unable to establish that he was otherwise qualified for the position from which the postal service discharged him, because the service's requirement that its employees be honest, reliable, trustworthy, and of good character and reputation, and not engage in criminal conduct, was a reasonable requirement, and Taub's criminal conduct precluded him from meeting it. In the alternative, the court of appeals held that even if Taub was an otherwise qualified individual with a disability, he was discharged for possession of heroin with intent to distribute, not for addiction, and he therefore could not make a showing that the defendant discharged him solely by reason of his disability, *i.e.,* his addiction.

The plaintiff Mr. Maddox relies heavily on the district court's opinion in *Ham v. State of Nevada,* 788 F.Supp. 455 (D.Nev.1992). In *Ham,* the plaintiff was removed from his position as Chief of the Bureau of Alcohol and Drug Abuse after his arrest for driving while intoxicated, to which charge he pleaded guilty. The Nevada Department of Human Resources, of which the Bureau of Alcohol and Drug Abuse was a part, allowed him leave to participate in an alcoholism treatment program, but upon his return, transferred him to a position as a chief in another program, with the same salary and benefits.

The district court in Nevada analyzed the issues in *Ham* in the following manner. "Since the drunk driving was a causally connected manifestation of the alleged handicap,

Defendants (sic) actions were admittedly based upon Plaintiff's alcoholism." 788 F.Supp. at 457–58. Therefore, the district court reasoned, the case was not one of disparate impact in which the defendant disclaimed any reliance on the plaintiff's disability and in which the traditional burden-shifting analysis developed in the case law under Title VII of the Civil Rights Act of 1964, as amended, applied, but was instead one in which the defendants were relying on the existence of the disability to argue that the plaintiff was not qualified to fill the position from which he was discharged. In such a case, the district court held, it was proper to place the burden on the defendants to show that the plaintiff was not otherwise qualified.

Taking up the statute's "otherwise qualified" requirement as it applied to the plaintiff Ham, the district court found an issue of fact precluding summary judgment, in that while "[t]he parties will likely argue whether or not one of the essential job functions of BADA Chief is to keep clear of public incidents that might give citizens occasion to question the validity and integrity of the program," there was no evidence that the plaintiff's alcoholism had caused him to be tardy or absent, that he had been intoxicated on the job, or that alcoholism had interfered with his work performance. 788 F.Supp. at 459.

Turning to the issue of reasonable accommodation, the court similarly held that the record before it did not permit it to decide as a matter of law whether the defendants might have accommodated the plaintiff in some manner which would have preserved the integrity of his bureau without permitting him to continue to abuse alcohol. *Id.* at 459–60. The court noted that at trial the burden would be on the plaintiff to prove that he was transferred solely because of his disability, but declined to grant summary judgment on this issue, noting its holding that "if a defendant acts on the basis of conduct caused by the handicap, it is the same as if that defendant acts on the basis of the handicap itself." *Id.* at 460.

The difficulty which this court has in accepting *Ham v. State of Nevada* as authoritative in this case is that the analysis of the court of appeals in *Taub v. Frank, supra,* seems more in keeping with the purposes and limitations of the Rehabilitation Act. In the context of employment, the act limits the application of the doctrine of employment at will in favor of a principle of non-discrimination against those who have conditions which can be classified or perceived as disabilities, at least to the extent that those disabilities may be accommodated in the workplace. The act does not, however, limit an employer's power to discharge an employee for conduct deemed to be inappropriate, whatever limitations other laws place on this power. It cannot be denied that in this case, Mr. Maddox was charged with conduct which, if proven, would constitute a crime, *see* Tennessee Code Annotated §§ 55–10–401 (driving while under the influence of an intoxicant or drug) and 39–17–310 (public intoxication), and which would not be considered socially acceptable by any objective standard. The affidavit testimony of Mr. Dickey and of Mr. Majors is clear on the point that it was this specific conduct, not any condition to which it might be related, which provoked the termination of Mr. Maddox' employment.

If the plaintiff's argument were accepted, an employer and recipient of federal assistance subject to the Rehabilitation Act would be forced to accommodate all behavior of an alcoholic which might be related to the alcoholic's use of intoxicating beverages. This court respectfully declines, however, to accept the *Ham* court's broad statement that any action in response to conduct caused by a disability is the same as prohibited action on the basis of the disability itself. While alcoholism might compel one to drink intoxicating beverages, there is no evidence before the court that it compelled the plaintiff to operate a motor vehicle or to engage in the other conduct reported by the newspapers in evidence. The court does not even reach the issue of reasonable accommodation in this case, because the court finds as a matter of law that the decision to terminate the plaintiff's employment was made on the basis of specific conduct, not on the basis of the plaintiff's disability, and therefore did not violate the Rehabilitation Act.

The plaintiff points to one item of evidence to attempt to show the existence of

a genuine issue of material fact concerning whether the decision to terminate Mr. Maddox' employment was motivated by unlawful discrimination against him as an alcoholic instead of by legitimate concern about his arrest and the resulting publicity. In his affidavit, as stated above, Mr. Maddox states that while he was undergoing rehabilitative treatment, he met with Mr. Kerrin, the athletic trainer who is now deceased, "and he told me that he had been advised that Doug Dickey had stated that he did 'not want another alcoholic in the program,' but that Johnny Majors was still 'in my corner.'" This is inadmissible double hearsay, and therefore cannot prevent an award of summary judgment in this case. "Affidavits composed of hearsay ... do not satisfy Rule 56(e) and must be disregarded." *State Mutual Life Assurance Company v. Deer Creek Park*, 612 F.2d 259, 264 (6th Cir.1979) (citations omitted). Even assuming that Mr. Maddox would be permitted to testify as to what he heard Mr. Kerrin say, *see* Fed. R.Evid. 804(b)(5), there is no basis on which Mr. Kerrin's declaration concerning that of which "he had been advised" could be admitted. *See* Fed.R.Evid. 805.

■ In granting the defendants' motion for summary judgment with respect to the plaintiff's Rehabilitation Act claim, the court is mindful of the Supreme Court's teaching that in evaluating whether a disabled person is otherwise qualified for a position, a district court "will need to conduct an individualized inquiry and make appropriate findings of fact." *School Board of Nassau County, Florida v. Arline*, 480 U.S. 273, 287, 107 S.Ct. 1123, 1130, 94 L.Ed.2d 307 (1987). *See also Hall v. United States Postal Service*, 857 F.2d 1073 (6th Cir.1988). Here, in spite of all of the evidence submitted by the plaintiff which might raise issues of fact concerning, for two examples, whether he completed his application form after the defendant university had hired him, and whether his alcoholism affected his performance as a football coach, one conclusion is established incontrovertibly by this record, that the university discharged Mr. Maddox as a result of criminal conduct which the university deemed embarrassing. Regardless of whether a more compassionate course of action might have

been to retain the plaintiff as an employee and to assist him in his struggle with alcoholism, the Rehabilitation Act did not require such a course of action. The plaintiff not having been discharged solely by reason of a disability, to address the issues of the plaintiff's qualifications to work as an assistant football coach and of the extent to which an athletic department can accommodate an alcoholic coach would be to stray into the forbidden region of advisory opinions.

## IV

■ In his complaint, the plaintiff stated also a cause of action under the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.* (the ADA). In 42 U.S.C. § 12112(a), the ADA prohibits an employer, employment agency, labor organization, or joint labor-management committee from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." The references in the ADA to the Rehabilitation Act, in 42 U.S.C. §§ 12117(b) and 12201(a), argue in favor of consistent constructions of the two bodies of law. What the court has stated above requires it to conclude as a matter of law that the plaintiff has not shown that he was subjected to discrimination because of his disability, and that the defendants are therefore entitled to summary judgment.

It merits mention that the ADA, unlike the Rehabilitation Act, provides expressly, in 42 U.S.C. § 12114(c)(4), that an employer

> may hold an employee who engages in the illegal use of drugs or who is an alcoholic to the same qualification standards for employment or job performance and behavior that such [employer] holds other employees, even if any unsatisfactory performance or behavior is related to the drug use or alcoholism of such employee.

Congress thus recognized explicitly the distinction which the court of appeals drew in *Taub v. Frank, supra,* between a disability proper and conduct related to the disability.

If in the case at bar, the defendant university could justifiably have discharged a non-alcoholic employee for conduct similar to that of Mr. Maddox, then this provision of the ADA would mandate upholding the university's termination of this plaintiff's employment.

## V

Because the court concludes as a matter of law that the plaintiff's claims under the Rehabilitation Act and the ADA must be dismissed, it is unnecessary to address the other issues raised by the defendants' motion for summary judgment, including whether the plaintiff has a remedy under the Rehabilitation Act against any defendant other than the university, whether the plaintiff's cause of action arose before the effective date of the ADA, whether the ADA might be enforced retroactively in this case, whether the plaintiff falsified his application for employment by the defendant university, and whether any such falsification would justify the termination of the plaintiff's employment regardless of any requirement of the Rehabilitation Act or of the ADA. Nothing in this opinion should be construed to express an opinion concerning any of these pretermitted issues. For the reasons stated, the court will grant the defendants' motion for summary judgment, and will dismiss this civil action.

## ORDER

For the reasons stated in the court's memorandum opinion filed simultaneously with this order, the court finds the defendants' motion for summary judgment [doc. 7] well taken, and it is **GRANTED.** It is **ORDERED** that this civil action is **DISMISSED.**

The parties' joint motion to amend the scheduling order [doc. 24] is **DENIED** as moot.